Gus Xilas and Angelo G. Kazalas, d/b/a Dudt's Bakery *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board. Dudt's Bakery, Appellant.

Argued October 8, 1981, before President Judge CRUMLISH, JR. and Judges BLATT and CRAIG, sitting as a panel of three.

*Timothy P. O'Reilly, McArdle, Caroselli, Spagnolli & Beachler,* for appellant.

*Anthony C. Busillo, II,* with him *James L. Crawford* and *Cheryl G. Young,* for appellee.

OPINION BY JUDGE BLATT, February 25, 1982:

The appellant (employer) seeks review of an order of the Court of Common Pleas of Allegheny County which sustained a finding by the Pennsylvania Labor

Relations Board (Board) that the employer had committed unfair labor practices when it discharged and laid off a number of its employees.

The Bakery and Confectionary Workers International Union of America, Local 12-A (Union), sought to unionize employees of a bakery owned by the employer, and the Union gave notice of its organizational activities by a letter to the employer on September 9, 1977.[1] The employer discharged 2 of its approximately 15 employees in October of 1977, allegedly for disciplinary reasons, and laid off a number of other employees in January of 1978, purportedly because of economic factors. The Union filed unfair labor practice charges with the Board against the employer, alleging that both the discharges and the layoffs were motivated by the employer's anti-union animus, and hearings were held on those charges in January and February of 1978. The Union later requested and received a representation election in April of 1978. In October of 1978, the Board filed its opinion and nisi order finding that the employer's actions against its employees were prompted by its anti-union attitude and that such activities were unfair labor practices under sections 6(1)(a) and (c) of the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§211.6(1)(a) and (c).[2] In November of 1978, the Board also cer-

_____

[1] The Union originally petitioned for certification from the National Labor Relations Board as the employees' exclusive bargaining representative, but the NLRB declined to assert jurisdiction because the employer's sales volume was too low to meet the jurisdictional requirements established pursuant to the Labor Management Relations Act, 29 U.S.C. §141. The Union then sought certification from the Board.

[2] Sections 6(1)(a) and (c) provide:

(1) It shall be an unfair labor practice for an employer —

tified the Union as the exclusive bargaining agent of the employees after tallying the votes from the representation election and finding that eight employees were in favor of the Union and that three were opposed to it. The Board did not decide the validity of four other votes which had been challenged because it concluded that those votes would not change the outcome of the election. The employer appealed the Board's rulings, which were affirmed by the court below, and this appeal was then taken.

The employer contends that the Board's findings are tainted because it substituted one hearing examiner for another during the course of the hearings with no legitimate reason therefor, and because the Board and not the two hearing examiners who presided over the hearings in this case and who alone were capable of

---

(a)  To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.

....

(c)  By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this act, or in any agreement approved or prescribed thereunder, or in any other statute of this Commonwealth, shall preclude an employer from making an agreement with a labor organization (not established, maintained or assisted by any action defined in this act as an unfair labor practice) to require, as a condition of employment, membership therein, if such labor organization is the representative of the employes, as provided in section seven (a) of this act, in the appropriate collective bargaining unit covered by such agreement when made and if such labor organization does not deny membership in its organization to a person or persons who are employes of the employer at the time of the making of such agreement, provided such employee was not employed in violation of any previously existing agreement with said labor organization. (Footnotes omitted.)

determining the credibility of the witnesses based upon their demeanors, made the relevant findings of fact.[3]

Section 8(b) of the PLRA, 43 P.S. §211.8(b), provides that a hearing regarding an unfair labor practice charge be conducted "before the Board, or any member or designated agent thereof," and section 8(c), 43 P.S. §211.8(c) requires that testimony taken at such a hearing be reduced to writing and filed with the Board. Section 8(c) specifically provides that, based upon such testimony, the Board shall determine whether or not an unfair labor practice has been committed and "shall state its findings of fact." We believe that this language clearly designates the Board as the ultimate finder of fact with the discretion to evaluate the credibility of the witnesses based upon the testimony in the record. In this regard, the role of the Board as factfinder is similar to that of the Unemployment Compensation Board of Review which is permitted to resolve credibility issues and to make findings without being bound by a referee's disposition of those matters. *See Unemployment Compensation Board of Review v. Wright*, 21 Pa. Commonwealth Ct. 637, 347 A.2d 328 (1975). We must, therefore, hold that the Board, not its appointed hearing examiners, has the final authority to determine issues of credibility and that the employer therefore was not prejudiced by the Board's substitution of examiners or by the alleged failure of either examiner to make findings of fact.

The employer next argues that the Board erred in finding that the employer's conduct in discharging two employees and laying off other employees was motivated by its anti-union sentiments. It argues that the evidence established: (1) that one employee was

---

[3] Hearing Examiner H. Turner Frost conducted the first hearing and the Honorable Robert L. Campbell thereafter replaced him for the other three hearings. Mr. Campbell then resigned from his position as a hearing examiner.

discharged for engaging in a doughball fight on the employer's premises and for failing to clean the work area properly; (2) that the other employee was discharged because of his continual poor attendance and his unacceptable reporting record; and (3) that the layoffs of other employees were prompted by a seasonal decline in business which regularly occurred in January.

Our scope of review of findings of fact made by the Board is limited to determining whether or not such findings are supported by substantial evidence in the record, *Pennsylvania Labor Relations Board v. Fabrication Specialists, Inc.*, 477 Pa. 23, 383 A.2d 802 (1978); *Pennsylvania Labor Relations Board v. Sand's Restaurant Corp.*, 429 Pa. 479, 240 A.2d 801 (1968), and our review of the record here reveals that, although conflicting testimony was introduced, substantial evidence does exist to support the Board's findings. Several employees testified that they had signed cards in early September of 1977 authorizing the Union to represent them and that about one week later one of the owners of the bakery called them into his office and told them that he knew that eight employees had signed authorization cards. They also testified that he threatened to close the bakery or to discharge the employees if the Union won a representation election. Thereafter, on October 18 and 25, two of these employees were discharged. The Board noted that the employee discharged for participating in a doughball fight was one of several involved in such horseplay, which was a common occurrence in the workplace, but that he was the only one who was disciplined. The other person whose employment was terminated had an admittedly poor attendance and reporting record, but the Board found that the rules and procedures regarding reporting off were newly established, were not posted and were not understood

by the other employees. The Board therefore concluded that the reasons given by the employer for these discharges were mere pretexts, while the real motivation was the employer's anti-union animus.

The Board similarly held that the employer improperly laid off employees in January of 1978. Although it was established that January is a slow month for the bakery business, the Board found that, while employees who had signed authorization cards were laid off, other employees who were hired after the Union's organization drive had begun continued to work. The Board was also persuaded by the fact that, at the time of the hearings in this matter, all of the employees who had signed authorization cards had quit, had been discharged or had been laid off, while none of the other employees suffered such consequences. It has been recognized that such conduct will have an inherently chilling effect on any motivation which an employe may have to organize and bargain collectively. *National Labor Relations Board v. Great Dane Trailers, Inc.*, 388 U.S. 26 (1967). We must agree with the Board that there was substantial evidence to establish the employer's anti-union motivation and that this conduct constituted unfair labor practices in violation of Sections 6(1)(a) and (c) of the PLRA.

Inasmuch as we believe that the Board correctly included the votes of the two improperly discharged employees in counting the votes from the representation election, we need not decide whether or not the four other challenged votes were valid, because they could not alter the result of the election, which the Union won 8-3.

We will therefore affirm the order of the court below upholding the Board's orders requiring reinstatement to employment and back pay for the employees concerned here and certification of the Union as the employee's bargaining representative.

25

## ORDER

AND, Now, this 25th day of February, 1982, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

Judge PALLADINO did not participate in the decision in this case.