554 A.2d 1021

Pennsylvania Association of State Mental Hospital Physicians, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

Argued June 16, 1988, before Judges COLINS and SMITH, and Senior Judge KALISH, sitting as a panel of three.

*Samuel L. Spear, Spear, Wilderman, Sigmond, Borish, Endy and Silverstein,* for petitioner.

*John B. Neurohr,* with him, *James L. Crawford,* for respondent.

*Frank A. Fisher, Jr.,* Chief Counsel, with him, *Robert F. Beck,* Assistant Counsel, for intervenor, Office of Administration and Office of the Budget.

OPINION BY JUDGE SMITH, March 2, 1989:

Petitioner, Pennsylvania Association of State Mental Hospital Physicians, appeals from the October 3, 1985 order of the Pennsylvania Labor Relations Board (Board)

clude certain psychiatric physicians at Eastern State School and Hospital (Eastern State) into Petitioner's bargaining unit previously certified by the Board. The decision of the Board is affirmed.

Issues presented for review are whether the Board erred in concluding that the employees at issue were managerial employees within the meaning of Section 301(16) of the Public Employee Relation Act (PERA);[1] and whether substantial evidence existed to support the conclusion that the physicians were managerial employees.

Petitioner was certified by the Board on November 10, 1972 as the exclusive representative of the Commonwealth's physicians as well as various other Commonwealth employees.[2] On October 15, 1980, Petitioner filed a petition for unit clarification with the Board to include psychiatric physicians II and child psychiatric physicians II as part of the existing bargaining unit comprised of professional employees. Petitioner amended its petition on April 27, 1981 to include psychiatric physicians III, and on May 11, 1982, the Commonwealth filed a petition for unit clarification to exclude child psychiatrists II and psychiatric physicians from the bargaining unit.

The hearing examiner issued a proposed order of unit clarification on July 27, 1983 in which he determined that the employees at issue were management level employ-

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.301.

[2] Specifically, the bargaining unit is comprised as follows:
In a subdivision of the employer unit comprised of all full-time and regular part-time Licensed Physicians, Medical Research Scientists, Dentists, and Podiatrists working for the Commonwealth of Pennsylvania, excluding all first level and above supervisors, managers and confidential employees as defined in the [Public Employee Relation Act (Act)].
Findings of Fact No. 3.

ees within the meaning of Section 301(16) of PERA. Petitioner filed exceptions to the proposed order, and by Board order issued October 3, 1985, the proposed order was made final and absolute.

On appeal, this Court's scope of review is limited to determining whether there has been a constitutional violation, an error of law, or whether findings of fact are supported by substantial evidence of record. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Commonwealth Ct. 436, 550 A.2d 1364 (1988); *Harbaugh v. Pennsylvania Labor Relations Board*, 107 Pa. Commonwealth Ct. 406, 528 A.2d 1024 (1987). This Court has consistently deferred to the Board's expertise in determining the appropriateness of a bargaining unit and will not substitute its judgment for that of the Board. *Chester Upland School District v. Pennsylvania Labor Relations Board*, 110 Pa. Commonwealth Ct. 439, 532 A.2d 925 (1987).

Petitioner initially argues that the Board erred in determining that the physicians who served as "team leaders" constituted managerial employees within the meaning of Section 301(16) of PERA.[3] Petitioner contends that the physicians at issue are not managerial employees because their input concerning policy matters is confined solely to their role in relation to the patient care process and that it was error for the Board to rely upon cases involving non-physicians to support its decision. In support of its position, Petitioner contends that although this is a case of first impression for the Board, the National Labor Relations Board (NLRB) has resolved

---

[3] Psychiatrists serve as leaders of staff teams assigned to various units or cottages to treat mentally ill children and adolescents at Eastern State. The team leaders are in charge of diagnosis, development and implementation of treatment plans; participate in the budgetary process; and serve on various committees at Eastern State. Findings of Fact No. 7-8, 13-15.

this issue and recognized that physicians are entitled to bargaining rights, albeit in their own separate unit. *See Montefiore Hospital & Medical Center*, 261 N.L.R.B. 569 (1982); *Ohio Valley Hospital Association*, 230 N.L.R.B. 604 (1977). The Board, however, has repeatedly addressed the question of whether there is a distinction between professional and managerial employees, and Petitioner fails to demonstrate why the Board's analysis is incorrect merely because it relies upon cases involving non-physician professionals.

Section 301(16) of PERA defines managerial employees to include:

'Management level employe' means any individual who is involved directly in the determination of policy or who responsibly directs the implementation thereof and shall include all employes above the first level of supervision.

The hearing examiner, in concluding that physicians were managerial, relied upon the test set forth in *Commonwealth of Pennsylvania (Attorneys Examiner I)*, 12 PPER ¶12131 at 203 (1981), which states that:

The statute may be read to state a three-part test in determining whether an employe will be considered managerial. Those three parts are (1) any individual who is involved directly in the determination of policy; (2) any individual who directs the implementation of policy; or (3) employes above the first level of supervision.

The Board has held that if employees meet only one part of the test, then those employees are managerial. *Commonwealth of Pennsylvania (Department of Education)*, 14 PPER ¶14136 (1983).[4] The hearing examiner, here,

---

[4] Petitioner did not except to the Board's conclusion that the physicians did not meet part two of the test nor does it argue that the

concluded that the physicians met the first part of the test which has been defined as follows:

> Any individual who is involved directly in the determination of policy would include not only a person who has authority or responsibility to select among options and to put proposed policies into effect, but also a person who participates with regularity in the essential process which results in a policy proposal and a decision to put such proposals into effect.

*Horsham Township*, 9 PPER ¶9151 at 327 (1978).

Petitioner argues that the test used by the Board in reaching its conclusion is erroneous, and posits that the correct test is the one enunciated in *National Labor Relations Board v. Yeshiva University*, 444 U.S. 672 (1980). In that case the United States Supreme Court held if it is determined that an employee's duties fall outside the scope of routine duties performed by similarly situated professionals, then that employee will be considered managerial. The test to be applied is whether the decisions alleged to be managerial are "incidental to" or "in addition to" the employee's routine duties. *Id.* at 690. Petitioner's contention is therefore meritless since the evidence demonstrates that the physicians' decisions were in addition to their professional responsibilities.

In reaching its decision, the Board relied on the physicians' involvement in the budgetary process and various policy committees of Eastern State. Petitioner claims that the physicians' role in the budgetary process is merely a part of the patient care process; that the team leader submits an evaluation of future needs once every

---

physicians are above the first level of supervision which is defined as the lowest level at which an employee functions as a supervisor. Section 301(19) of PERA.

one or two years; that the budget preparation is a group process which is made after consulting with other staff members; and that the final budget decision is made by the administration. Petitioner asserts that serving on the budget committee does not elevate the physicians to managerial status, as the ultimate decision is made by the administration. The hearing examiner specifically found that the physicians play an integral part in the budgetary process in that the team leaders assess the degree to which goals of the previous year were met and set new goals accordingly. The budget is then submitted to the budget committee comprised of two physicians and an assistant superintendent, and although the superintendent makes the final decision, the assessments made by the physicians are followed ninety to ninety-five percent of the time. Findings of Fact No. 13. An effective role in the budgetary process is indicative of a managerial function. *Fraternal Order of Police, Star Lodge No. 20 v. Pennsylvania Labor Relations Board*, 104 Pa. Commonwealth Ct. 565, 522 A.2d 697 (1987), *appeal granted*, 518 Pa. 628, 541 A.2d 1139 (1988). The record here contains sufficient evidence to support the Board's conclusion in this regard.

Petitioner further contends that *General Dynamics Corp.*, 213 N.L.R.B. 851 (1974) is controlling where the NLRB determined that managerial status is reserved only for those who are closely aligned with management. Petitioner's reliance on *General Dynamics Corp.* is misplaced as budgetary preparation for personnel, supplies and equipment is not the usual task of a physician and the budget decisions have a direct impact on the employer's policies.

Petitioner next argues that the physicians' participation on committees does not warrant a conclusion that they are managerial since the committees serve as an

extension of the patient care process. The hearing examiner determined that the physicians' participation on committees was central to the administration of Eastern State. For instance, the by-laws committee establishes rules and regulations concerning the relationship of the medical staff and the administration at Eastern State; the utilization committee determines the quality of medical services; and the credentials committee decides whether or not the credentials of the staff are in order, along with the clinical privileges of the staff. In *Employees of Carlynton School District v. Carlynton School District*, 31 Pa. Commonwealth Ct. 631, 377 A.2d 1033 (1977), this Court held that employees who at times determined policy and at times directed implementation of the policy were management level employees. Additionally, in *Horsham Township* the Board held that a person who is directly involved in the determination of policy also includes a person who participates with regularity in the policy process. The Board therefore correctly concluded that the physicians were managerial employees as the physicians' participation on the committees involved them in policy determinations.

Moreover, *Montefiore Hospital* does not support the Petitioner's position. The NLRB in that case held that physicians' decisions are not managerial if they are part of the routine discharge of professional duties. However, the policy decisions made by physicians in the instant matter are not within the scope of their professional duties. Further, in *Montefiore Hospital*, the physicians had no impact whatsoever on management policy because all institution-wide policy was formulated by the central administration, and there was very little managerial autonomy within each department. Clearly, the evidence in this case suggests otherwise.

Petitioner further raises various claims regarding the hearing examiner's evaluation of the testimony, and that he erred in commenting that the testimony of two of Petitioner's witnesses, Dr. Bleiman and Dr. Kravitz, must be discredited because they "appeared as malcontents with axes to grind against the Commonwealth." Hearing Examiner's Opinion, p. 10. It must be noted that credibility determinations are exclusively reserved to the Board. *Pennsylvania Labor Relations Board v. Fabrication Specialists*, 477 Pa. 23, 383 A.2d 802 (1978). Thus, Petitioner's assertions are without merit.

Accordingly, having determined that the Board's decision is supported by substantial evidence and that no error of law was committed, the order of the Board is affirmed.

## ORDER

AND NOW, this 2nd day of March, 1989, the order of the Pennsylvania Labor Relations Board is affirmed.

Judge MACPHAIL did not participate in the decision in this case.

DISSENTING OPINION BY SENIOR JUDGE KALISH:
I respectfully dissent.

Section 301(16) of PERA defines a management level employee as "any individual who is involved directly in the determination of policy or who reasonably directs the implementation thereof. ..." Thus, to be managerial, an employee must be aligned with management.

The Pennsylvania Labor Relations Board's (PLRB) characterization of a particular position as "managerial" or "supervisory" is essentially a finding of fact. However, the principle which the PLRB follows in making that determination is a question of law. *Township of Chartiers v. Pennsylvania Labor Relations Board*, 98 Pa. Commonwealth Ct. 44, 510 A.2d 884 (1986). Because of the

PLRB's expertise, the court will extend deference to the PLRB's legal principles in defining what is "managerial" and what is "supervisory," provided they are reasonably consistent in formulation and application. *Chartiers*. Furthermore, the appellate court, while bound by the findings of fact which are supported by substantial evidence, can draw appropriate conclusions from the evidence, regardless of the action of the Board. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977); *Kemp v. Majestic Amusement Co.*, 427 Pa. 429, 234 A.2d 846 (1967); *Brooks v. Conston*, 356 Pa. 69, 51 A.2d 684 (1947).

Here, the hospital operates under a "cluster system" which separates the diagnostic and development of treatment plan functions of the psychiatrists from their implementation of treatment plans. The PLRB found that the psychiatrists acted as team leaders in diagnosing patients and developing the treatment to be implemented. As team leaders, they supervise members of their team which includes psychologists, nurses, social workers, and child care workers. The psychiatrists exercise no judgment in assigning work, hiring, discharging, disciplining, transferring, or granting vacation time off.

The PLRB found that the psychiatrists are involved in the budgetary process each year in that they assess the degree to which the goals and objectives of *their* units were realized for the past year, and set new ones for the future. The PLRB also found that the psychiatrists served on various committees of the medical staff which makes recommendations to the executive committee. The PLRB concluded that these psychiatrists are management level employees within the meaning of section 301(16) of the Public Employee Relation Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.301(16).

Unlike police department cases where this court has set down seven indicia of managerial status (*Chartiers*), based on a long pattern of decisions by the Board, in hospital cases we have no long-established pattern or criteria to guide us. However, normally an employee may be excluded as managerial only if he represents management interests by taking or recommending actions that effectively control or implement employer policy. *Sutter Community Hospitals of Sacramento Inc.*, 227 NLRB 181 (1976).

For example, in *National Labor Relations Board v. Yeshiva University*, 444 U.S. 672, 63 L.Ed. 2d 115 (1980), the power of the teaching faculty extended beyond strictly academic concerns. The faculty made recommendations to the dean in every case of faculty hiring, tenure, sabbaticals, termination, and promotion. Thus, the faculty's professional interests, as applied to governance at the university could not be separated from those of the institution. It ended in the formulation of a university policy.

In the instant case, the psychiatrists exercise no judgment in assigning work, hiring, discharging, disciplining, transferring, or the granting of vacation time off. Any recommendation that they give is attributable solely to their expertise as psychiatrists and not to any management skills. The recommendations are offered to serve their own independent interest in creating an effective team of professionals. The hospital retains the ultimate decision-making authority. Psychiatrists are not hired to make operative the policies of the hospital.

> It is not extraordinary for employees to seek to exert influence over matters embedded in an employment relationship for which they share a concern, or that management would be responsive to their strongly held desires.

Finkin, *The National Labor Relations Board in Higher Education*, 5 U. Toledo L. Rev. 608, 616 (1974).

The operation of hospitals today is "big business" and the role of the psychiatrist is miniscule in the institution's decision-making process.

Under the circumstances, to conclude that psychiatrists were managerial is irrational.