510 A.2d 884

The Township of Chartiers, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

Argued February 3, 1986, before Judges CRAIG and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*James P. Liekar, Liekar and Liekar,* for petitioner.

*Patricia J. Goldband,* with her, *James L. Crawford,* for respondent.

OPINION BY JUDGE CRAIG, June 10, 1986:

The Township of Chartiers (township) appeals from an order of the Pennsylvania Labor Relations Board (PLRB) holding that the township's police chief and sergeants are not managerial employees within the meaning of the Pennsylvania Labor Relations Act (PLRA), the Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §211.1 and the Act of June 24, 1968, P.L. 237, 43 P.S. §217.1 (Act 111), and therefore are included in the bargaining unit.

The Chartiers Township Police Department Wage and Policy Unit (union) had filed an investigation and certification of representatives petition with the PLRB, seeking to represent a bargaining unit comprised of

eight part-time police officers, two full-time police officers, and one police chief. After a hearing, the hearing examiner determined that none of the police officers are managerial employees.

Thereafter, a PLRB representative conducted a representation election and found the union to be the exclusive bargaining representative of all the police officers of the township. The township filed exceptions to the PLRB representative's order, which affirmed the hearing examiner's decision that the police chief and sergeants are not managerial employees. The PLRB dismissed the township's exceptions, and affirmed the PLRB representative's order. This appeal followed.

The issues before us are whether, as a matter of law, the PLRB adopted the proper rule in determining the existence of managerial status, and whether, as a matter of fact, reached findings supported by substantial evidence.

Act 111, the statute which grants to police and fire officers the right to bargain collectively, provides no guidance for determining what criteria establish managerial status because the Act does not define that term.[1] However, the Public Employe Relations Act (PERA)[2] does contain a definition of "management level

---

[1] This court in *The Employes of the City of Philadelphia,* 83 Pa. Commonwealth Ct. 274, 477 A.2d 47 (1984), affirmed the PLRB's inclusion of supervisors in the same unit as rank and file employees under Act 111, and the impropriety of including managerial employees within a bargaining unit under Act 111. Similarly, in *Commonwealth v. Pennsylvania Labor Relations Board (Capitol Police),* 64 Pa. Commonwealth Ct. 525, 441 A.2d 470 (1982), *aff'd in part,* 502 Pa. 7, 463 A.2d 409 (1983), the PLRB's practice of including supervisors and excluding managerial employees from a bargaining unit under Act 111 was endorsed. However, those cases do not involve the issue of the appropriate criteria for determining managerial status under Act 111.

[2] The Act of July 23, 1970, P.L. 563, 43 P.S. §1101.101.

employe." Although our Supreme Court in *Chirico v. Board of Supervisors for Newtown Township*, 504 Pa. 71, 470 A.2d 470 (1983), declared that Act 111 was not to be read in pari materia with the PERA because the PERA expressly excludes police and fire officers from its coverage, nevertheless judicial consideration can benefit from the definition of managerial employee contained in the PERA, which the legislature applied to a different category of public employees. Section 301(16) of the PERA defines managerial employee as follows:

'Management level employe' means any individual who is involved directly in the determination of policy or who responsibly directs the implementation thereof and shall include all employes above the first level of supervision.

43 P.S. §1101.301(16).[3]

The PLRB's categorization of a particular position, as managerial or supervisory, is essentially a finding of fact, and the courts will defer to the PLRB's experience and specialized expertise in such factual matters. On the other hand, the principles which the board follows, in reaching such determinations, are rules of law by their very nature. The courts will nevertheless extend deference to the PLRB's legal principles which define what is "managerial" and what is "supervisory". However, the courts are entitled to expect reasonable consistency in the PLRB's formulation and application of the guidelines which classify positions as included or not included in a bargaining unit.

A thorough review of the PLRB's decisions, in police department cases, indicates that, even though discussions in PLRB opinions (dicta) have varied widely in

---

[3] The PLRB has looked to the definition of managerial employee contained in the PERA, for guidance, in excluding managerial employees from the coverage of Act 111.

the characterization of specific *functions* as managerial or supervisory, the PLRB's holdings as to certain *positions* possessing various functions have been largely consistent. An analysis of PLRB decisions in this subject matter area follows.

### Functions Associated With Positions Held to be Managerial

In most cases, the PLRB has treated positions with the following functions as managerial; that is, the PLRB has classified the position as managerial when the named function is affirmatively among the powers of the position, and has rated the position as merely supervisory when the function is absent from those powers:

Policy Formulation—authority to initiate departmental policies, including the power to issue general directives and regulations;[4]

Program Development—authority to develop and change operational programs of the department;[5]

---

[4] *Cranberry Township,* 16 Pa.Pub.Employee R. 16149; *City of Bethlehem,* 16 Pa.Pub.Employee R. 16146; *Franklin Township,* 16 Pa.Pub.Employee R. 16145; *McSherrystown Borough,* 16 Pa.Pub. Employee R. 16123; *Ellport Borough,* 16 Pa.Pub.Employee R. 16065; *Montoursville Borough,* 16 Pa.Pub.Employee R. 16044; *Falls Township,* 15 Pa.Pub.Employee R. 15090; *Kennedy Township,* 15 Pa.Pub.Employee R. 15080; *Millvale Borough,* 14 Pa.Pub.Employee R. 14275; *Camp Hill Borough,* 14 Pa.Pub.Employee R. 14234; *Municipality of Monroeville,* 14 Pa.Pub.Employee R. 14129; *Coatesville Police Department,* 14 Pa.Pub.Employee R. 14058; *Municipality of Bethel Park,* 14 Pa.Pub.Employee R. 14042; *Township of Lower Merion,* 13 Pa.Pub.Employee R. 13276; *Upper Southampton Township,* 13 Pa.Pub.Employee R. 13091; *City of Chester,* 11 Pa.Pub.Employee R. 11013.

[5] *Chartiers Township,* 16 Pa.Pub.Employee R. 16030; *Cranberry Township,* 16 Pa.Pub.Employee R. 16149; *Montoursville Borough,* 16 Pa.Pub.Employee R. 16044.

Public Relations—independence in representing the department to the public;[6]

Budget Making—authority to prepare proposed budgets for the department, as distinguished from merely making suggestions with respect to particular budget items;[7]

Purchasing Decisions—authority to make substantial purchasing decisions, rather than merely making suggestions;[8]

Hiring Recommendations—authority to make recommendations concerning persons to be hired and dismissed by the governing officials;[9] and

---

[6] *Cranberry Township,* 16 Pa.Pub.Employee R. 16149; *City of Bethlehem,* 16 Pa.Pub.Employee R. 16146; *Camp Hill Borough,* 14 Pa.Pub.Employee R. 14234; *Coatesville Police Department,* 14 Pa. Pub.Employee R. 14058; *Township of Lower Merion,* 13 Pa.Pub. Employee R. 13276; Cf. different result in *Town of McCandless,* 10 Pa.Pub.Employee R. 10071.

[7] *Cranberry Township,* 16 Pa.Pub.Employee R. 16149; *City of Bethlehem,* 16 Pa.Pub.Employee R. 16146; *Franklin Township,* 16 Pa.Pub.Employee R. 16145; *Moon Township,* 16 Pa.Pub.Employee R. 16142; *Montoursville Borough,* 16 Pa.Pub.Employee R. 16044; *Falls Township,* 15 Pa.Pub.Employee R. 15090; *Millvale Borough,* 14 Pa.Pub.Employee R. 14275; *Municipality of Monroeville,* 14 Pa. Pub.Employee R. 14129; *Coatesville Police Department,* 14 Pa. Pub.Employee R. 14058; *Municipality of Bethel Park,* 14 Pa.Pub. Employee R. 14042; *Township of Lower Merion,* 13 Pa.Pub.Employee R. 13276; *Township of Middletown,* 11 Pa.Pub.Employee R. 11015; *City of Chester,* 11 Pa.Pub.Employee R. 11013.

[8] *Chartiers Township,* 16 Pa.Pub.Employee R. 16030; *Cranberry Township,* 16 Pa.Pub.Employee R. 16149; *North Coventry Township,* 16 Pa.Pub.Employee R. 16111; *Montoursville Borough,* 16 Pa.Pub.Employee R. 16044; *Coatesville Police Department,* 14 Pa.Pub.Employee R. 14058.

[9] *Municipality of Monroeville,* 14 Pa.Pub.Employee R. 14129; *Youngsville Borough,* 13 Pa.Pub.Employee R. 13032; *Penn Township,* 9 Pa.Pub.Employee R. 9030.

Disciplinary Role—authority to initiate formal disciplinary actions.[10]

## Functions Associated With Positions Held to be Supervisory

Normally—but with some exceptions—the PLRB has held that police positions associated with the following functions are supervisory rather than managerial:

Routine Direction—control of daily operations of subordinates;[11]

Basic Policing Role—performance of police duties like those performed by all police officers;[12]

---

[10] *Chartiers Township,* 16 Pa.Pub.Employee R. 16030; *City of Bethlehem,* 16 Pa.Pub.Employee R. 16146; *McSherrystown Borough,* 16 Pa.Pub.Employee R. 16123; *Millvale Borough,* 14 Pa. Pub.Employee R. 14275; *Coatesville Police Department,* 14 Pa. Pub.Employee R. 14058; *Township of Lower Merion,* 13 Pa.Pub. Employee R. 13276; *Youngsville Borough,* 13 Pa.Pub.Employee R. 13032; *City of Chester,* 11 Pa.Pub.Employee R. 11013; Cf. different result in *Moon Township,* 16 Pa.Pub.Employee R. 16142; *Town of McCandless,* 10 Pa.Pub.Employee R. 10071.

[11] *Moon Township,* 16 Pa.Pub.Employee R. 16142; *McSherrystown Borough,* 16 Pa.Pub.Employee R. 16123; *North Coventry Township,* 16 Pa.Pub.Employee R. 16111; *Kennedy Township,* 15 Pa.Pub.Employee R. 15080; *City of Chester,* 11 Pa.Pub.Employee R. 11013; *Town of McCandless,* 10 Pa.Pub.Employee R. 10071; *Borough of West Reading,* 10 Pa.Pub.Employee R. 10069; Cf. different result in *Ellport Borough,* 16 Pa.Pub.Employee R. 16065; *Falls Township,* 15 Pa.Pub.Employee R. 15090; *Coatesville Police Department,* 14 Pa.Pub.Employee R. 14058.

[12] *Franklin Township,* 16 Pa.Pub.Employee R. 15090; *McSherrystown Borough,* 16 Pa.Pub.Employee R. 16123; *North Coventry Township,* 16 Pa.Pub.Employee R. 16111; *Municipality of Monroeville,* 14 Pa.Pub.Employee R. 14129; Cf. different result in *Ellport Borough,* 16 Pa.Pub.Employee R. 16065; *Millvale Borough,* 14 Pa.Pub.Employee R. 14275.

Exclusion from Negotiations—non-participation in the management side of bargaining, or involvement only in suggestions;[13] and

Inclusion in Bargaining Unit—past treatment of the position as being within the bargaining unit.[14]

## Function Associated With Both Managerial and Supervisory Positions

The scheduling function—the authority to prescribe daily and shift schedules—has apparently not been determinative. This function has been present with respect to some positions which the PLRB has classified as managerial,[15] and it has also been involved in positions which the PLRB has ultimately rated as merely supervisory.[16]

### Presumptions Adopted by The PLRB

In *Lower Allen Township*, 8 Pa. Pub. Employee R. 376 (1977), *aff'd in part*, 11 Pa. Pub. Employee R. 17

---

[13] *Municipality of Monroeville*, 14 Pa.Pub.Employee R. 14129; *Mt. Holly Springs Borough*, 13 Pa.Pub.Employee R. 13013; *South Whitehall Township*, 10 Pa.Pub.Employee R. 10083.

[14] *McSherrystown Borough*, 16 Pa.Pub.Employee R. 16123; *Kennedy Township*, 15 Pa.Pub.Employee R. 15080; *Upper Southampton Township*, 13 Pa.Pub.Employee R. 13091; *Borough of West Reading*, 10 Pa.Pub.Employee R. 10069; Cf. different result in *City of Bethlehem*, 16 Pa.Pub.Employee R. 16149; *Falls Township*, 15 Pa.Pub.Employee R. 15090.

[15] *City of Bethlehem*, 16 Pa.Pub.Employee R. 16146; *Ellport Borough*, 16 Pa.Pub.Employee R. 16065; *Millvale Borough*, 14 Pa.Pub.Employee R. 14275; *Municipality of Bethel Park*, 14 Pa. Pub.Employee R. 14042; *Upper Southampton Township*, 13 Pa. Pub.Employee R. 13091; *Youngsville Borough*, 13 Pa.Pub.Employee R. 13032; *Mt. Holly Springs Borough*, 13 Pa.Pub.Employee R. 13012.

[16] *Chartiers Township*, 16 Pa.Pub.Employee R. 16030; *Moon Township*, 16 Pa.Pub.Employee R. 16142; *North Coventry Township*, 16 Pa.Pub.Employee R. 16111; *Town of McCandless*, 10 Pa. Pub.Employee R. 10071; *Borough of West Reading*, 10 Pa.Pub. Employee R. 10069.

(No. 882 Civil 1979, Court of Common Pleas of Cumberland County, filed November 28, 1979), the PLRB adopted the following presumptions:

> In police departments of less than ten police personnel of any rank we shall *presume* the chief to possess supervisory and not managerial authority and to be includable in the unit. In departments of ten or more we shall *presume* the chief to possess managerial authority and exclude him from the unit. The presumption will be given uniform application in all cases. In each case the presumption shall be *rebuttable by either party* whose obligation shall be to overcome the presumption by competent and credible evidence. The Board will also apply these guidelines to joint requests for certification. If the jointly requested unit does not conform to our guidelines, the Board will order a hearing to be held so that a record can be compiled to overcome our presumptions. (Emphasis added.)

*Lower Allen Township,* 8 Pa. Pub. Employee R. at 379-80. However, the Court of Common Pleas refused to adopt the PLRB's rebuttable presumptions because "the workability of such a solution in all police departments, especially of similar size, is far from evident."

The township contends that our Supreme Court and this court in *Commonwealth v. Pennsylvania Labor Relations Board (Capitol Police),* 64 Pa. Commonwealth Ct. 525, 441 A.2d 470 (1982), *aff'd in part,* 502 Pa. 7, 463 A.2d 409 (1983), adopted the PLRB's *Lower Allen Township* decision and "rebuttable presumption standard" for determining managerial employee under Act 111. However, the issue in *Capitol Police* was whether the capitol police are "guards" under PERA rather than "police officers" under Act 111. The appropriate criteria for determining managerial status under

Act 111 was not in issue and neither the Supreme Court nor this court made any reference to *Lower Allen Township.*

In *The Employes of the City of Philadelphia,* 83 Pa. Commonwealth Ct. 274, 477 A.2d 47 (1984), this court cited *Lower Allen Township* to demonstrate the PLRB's practice of excluding managerial employees from a bargaining unit, but we did not approve the PLRB's rebuttable presumptions.

Although the PLRB has departed in some instances from its fairly consistent pattern in determining whether a particular position is managerial or supervisory, the PLRB's decisions suggest workable criteria for determining managerial status. However, we do not find any reasonable basis for the PLRB's presumptions which depend simply upon whether the police department has ten or fewer officers. The size of an organization provides no reliable measure of the authority exercised by the administrator at the top of the organization. We therefore reject those presumptions as arbitrary.

### Application of Criteria to Present Case

Applying the PLRB's criteria to this case, we affirm the PLRB's order that the sergeants and chief do not possess managerial status and therefore are included in the bargaining unit.

With respect to the sergeants' functions, the PLRB adopted the hearing examiner's finding as follows:

16. That the two sergeants in the Township's police department have no input into the budget, never represent the Township at public functions, have no input into the composition of the police force, have no input into how the police department is run on a day-to-day basis and only meet with the [board of] supervisors when all of the other police officers are present.

The township does not question the existence of substantial evidence in the record to support that find-

ing. The sergeants have no budgeting authority, no independent public relations role, no hiring powers, nor any other function associated with managerial status; therefore, the PLRB correctly concluded that the sergeants are not managerial employees.

The relevant findings of facts regarding the chief, issued by the hearing examiner and adopted by the PLRB, are as follows:

4. That the Township's supervisors established the written policies under which the police department currently operates.

6. That the supervisors prepare the police department budget. The chief of police sits with the supervisors when the police budget is being prepared. He does not prepare a 'formal' budget for submission to the supervisors. At the request of the supervisors, all of the police officers together submit requests for consideration during the preparation of the budget. The supervisors decide which requests of the police officers will be provided for in the budget.

7. That the supervisors decide when to buy a new police car.

8. That the supervisors have fixed the maximum number of hours the police officers may work. The chief of police schedules the police officers so as not to exceed the maximum number of hours fixed by the supervisors.

10. That the supervisors must approve all purchases for the police department.

12. That the chief of police participates in public functions as a representative of the Township.

14. That the chief of police must get approval from the supervisors before he decides to assign

more officers to traffic control if 'a lot of time' is involved. Otherwise, he can make that decision himself.

15. That the chief of police must get approval from the supervisors before he decides to change the composition of the police force or the shift worked by a police officer.

The township contends that the PLRB erred, as a matter of law, in concluding that the chief is not a managerial employee because sections 1 and 4 of the Act of June 15, 1951, P.L. 586, *as amended,* 53 P.S. §§811, 814 (Police Tenure Act) and sections 101, 593, 802 and 902 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§65101, 65593, 65802, 65902, empower only the township supervisors themselves to do the suspending, firing, purchasing and budgeting. Accordingly, the township suggests that the PLRB criteria, which look to whether the police chief exercises those powers, are legally unrealistic and therefore unworkable.

This court does not doubt that the PLRB understands that the state enabling laws vest the elective officials with the ultimate authority to adopt budgets and make purchases. However, in cases like this, the PLRB is not being unrealistic when it considers how effectively the police chief participates in the decision-making process relating to those matters.

After a thorough review of the record, we find that the PLRB's findings of fact are supported by substantial record evidence, and that the PLRB's legal conclusions are supported by the findings. In particular, Findings No. 6 and 8 demonstrate that the chief does not have the authority to prepare proposed budgets and therefore is not a managerial employee in terms of the budgetary function. Findings No. 7 and 10 establish that the chief lacks authority to make substantial purchasing decisions and thus does not perform a managerial role in light of the purchas-

ing criterion. Finding No. 15 demonstrates that the chief has no authority to initiate formal disciplinary actions and therefore does not possess managerial status as indicated by the disciplinary role.

All of the above enumerated findings of facts, except for Finding No. 12, are functions associated with positions held to be supervisory. Therefore, the PLRB properly found the chief to be included in the bargaining unit.

### Conclusion

Accordingly, the order of the PLRB is affirmed.

### ORDER

NOW, June 10, 1986, the order of the Pennsylvania Labor Relations Board at No. PF-R-84-44-W, dated January 8, 1985, is affirmed.

Judge COLINS dissents.