511 A.2d 923
522 A.2d 697

Fraternal Order of Police, Star Lodge No. 20, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

Argued May 12, 1986, before Judges MacPhail and Colins, and Senior Judge Barbieri, sitting as a panel of three. Reargued November 19, 1986, before President Judge Crumlish, Jr., Judges Craig, MacPhail, Doyle, Barry, Colins and Palladino.

*Anthony C. Busillo, II, Mancke, Lightman and Wagner,* for petitioner.

*James L. Crawford,* with him, *Kathryn Speaker MacNett,* for respondent.

Opinion by Judge Colins, June 27, 1986:

The Fraternal Order of Police (Union) appeals from an order of the Pennsylvania Labor Relations Board

(Board) which concluded that the City of Bethlehem's Police Commissioner and six (6) Captains are managerial employees within the meaning of the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§211.1-211.13 and that Act commonly referred to as Act 111, Act of June 24, 1968, P.L. 237, 43 P.S. §§217.1-217.10 and, therefore, are excluded from the bargaining unit.

The Union had filed an investigation and certification of representative petitions with the Board, seeking to represent a bargaining unit of the City's Police Department. After a hearing, the hearing examiner determined that the Commissioner and Captains were managerial employees. Thereafter, a representative election was held and the Union was certified as the exclusive bargaining representative for the Police Department, excluding the aforementioned managerial employees. The Union filed exceptions to the certification, alleging that the Captains should have been included in the bargaining unit. The Board dismissed the exceptions, and affirmed the certification. This appeal followed.

In reviewing an order of the Board, our scope of review is limited to a determination of whether the factual findings of the Board are supported by substantial evidence. If so, they are conclusive upon review. *Commonwealth v. Pennsylvania Labor Relations Board*, 502 Pa. 7, 463 A.2d 409 (1983).

This Court has recently approved certain indicia used by the Board to define managerial status. *Township of Chartiers v. Pennsylvania Labor Relations Board*, 98 Pa. Commonwealth Ct. 44, 510 A.2d 884 (1986). These include the following:

> Policy Formulation—authority to initiate departmental policies, including the power to issue general directives and regulations;

Program Development—authority to develop and change operational programs of the Department;

Public Relations—Independence in representing the Department to the public;

Budget Making—authority to prepare proposed budgets for the Department, as distinguished from merely making suggestions with respect to particular budget items;

Purchasing Decisions — authority to make substantial purchasing decisions, rather than merely making suggestions;

Hiring Recommendations — authority to make recommendations concerning persons to be hired and dismissed by the governing officials;

Disciplinary Rule—authority to initiate formal disciplinary actions.

The hearing examiner found, *inter alia,* that the Captains and the Commissioner discussed and resolved policy matters through consensus; that standard operating procedures are drafted by consensus; that the Captains act as a liaison between the police department and various citizen groups; that each Captain prepares a budget for his individual bureau; that the Captains evaluated the officers under their command; and that the Captains have the authority to initiate formal disciplinary actions. After a thorough review of the record, we find that these findings are supported by substantial evidence. These findings support the legal conclusion that the Captains are managerial employees; therefore, the order of the Board is affirmed.

ORDER

AND NOW, June 27, 1986, the order of the Pennsylvania Labor Relations Board, No. PF-R-83-74-E, dated June 10, 1985, is affirmed.

OPINION BY JUDGE CRAIG, March 13, 1987:

Pursuant to reargument before the court en banc after the issuance of a decision of this court by a panel, *Fraternal Order of Police, Star Lodge No. 20 v. Pennsylvania Labor Relations Board (Star Lodge I)*, 104 Pa. Commonwealth Ct. 561, 511 A.2d 923 (1986), the whole court's reconsideration leads to the conclusion that our initial decision—affirming the Pennsylvania Labor Relations Board (Board)—is sound.

The court en banc adopts the succinct statement of the case which Judge COLINS authored in the initial opinion, *Star Lodge I*, as follows:

The Fraternal Order of Police (Union) appeals from an order of the Pennsylvania Labor Relations Board (Board) which concluded that the City of Bethlehem's Police Commissioner and six (6) Captains are managerial employees within the meaning of the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§211.1-211.13 and that Act commonly referred to as Act 111, Act of June 24, 1968, P.L. 237, 43 P.S. §§217.1-217.10 and, therefore, are excluded from the bargaining unit.

The Union had filed an investigation and certification of representative petitions with the Board, seeking to represent a bargaining unit of the City's Police Department. After a hearing, the hearing examiner determined that the Commissioner and Captains were managerial employees. Thereafter, a representative election was held and the Union was certified as the exclusive bargaining representative for the Police Department, excluding the aforementioned managerial employees. The Union filed exceptions to the certification, alleging that the Cap-

tains should have been included in the bargaining unit. The Board dismissed the exceptions, and affirmed the certification. This appeal followed.

In reviewing an order of the Board, our scope of review is limited to a determination of whether the factual findings of the Board are supported by substantial evidence. If so, they are conclusive upon review. Commonwealth v. Pennsylvania Labor Relations Board, 502 Pa. 7, 463 A.2d 409 (1983).

One of the reasons for our grant of reargument was that the Board, despite this court's affirmance of its decision, essentially joined the Union in requesting reargument. Of course, the Board has no quarrel with the favorable result received in this class. Instead, the Board displays concern about three out of the seven indicia of managerial status accepted by this court in *Township of Chartiers v. Pennsylvania Labor Relations Board (Chartiers)*, 98 Pa. Commonwealth Ct. 44, 510 A.2d 884 (1986), *appeal denied*, 513 Pa. 643, 521 A.2d 934 (1986), and further applied in *Star Lodge I*.

In *Chartiers*, this court declined to endorse the Board's rebuttable presumption, voiced in *Lower Allen Township*, 8 Pa. Pub. Employee R. 376 (1977), *aff'd in part*, 11 Pa. Pub. Employee R. 17 (No. 882 Civil 1979, Court of Common Pleas of Cumberland County, filed November 28, 1979), that, in police departments of less than ten police personnel, the police chief would be presumed to have only supervisory status, not managerial authority. Our *Chartiers* opinion, noting the arbitrary nature of that presumption, pointed out that it has never achieved adoption by the common pleas court which affirmed the result in *Lower Allen*, nor by the Pennsylvania Supreme Court or this court.

In this case, the Board has not attacked that disposition of the presumption.

Although Board counsel contends that this court has approved the other indicia of managerial status adopted by the Board in its *Lower Allen* decision—namely, by our decision in *Commonwealth v. Pennsylvania Labor Relations Board (Capitol Police)*, 64 Pa. Commonwealth Ct. 525, 441 A.2d 470 (1982), *aff'd in part*, 502 Pa. 7, 463 A.2d 409 (1983)—such has not been the case. The determinative issue in *Capitol Police* was whether the capitol police were security guards rather than police officers; the managerial status of their superintendent and captain was only peripherally involved, and there was no reference to *Lower Allen* by either this court or the Supreme Court.

The Board's concern is with the extent to which the *Chartiers* opinion relied upon factual indicia which the Board itself developed over a long pattern of decisions, by which we might be guided in evaluating the validity of a Board decision according managerial status to a particular officer or officers. Because of this court's respect for the expertise of the Board in these matters, we did not attempt to devise criteria of our own choosing in *Chartiers;* instead, we exhaustively reviewed all the available final adjudications published in the Board's reports, in an attempt to perceive a systematic and consistent pattern for mutual guidance in the long run.

To identify a systematic pattern of indicia was not an easy task because the Board has been confronted with a great variety of situations in this class of cases under Act 111. Understandably, despite the Board's earnest and expert efforts, there are a number of inconsistencies which appear when all the final adjudications by the Board and its examiners are scrutinized. In this present case, the Union provided, as Appendix F to its brief, a thoughtful charting of previous Board decisions on the managerial-supervisory question which, as the Union

stated in its Application for Reargument, "clearly demonstrates that the board has reached conflicting results on the management issue *based on identical facts.*" (Emphasis in the original.) Board counsel, in its answer to the reargument petition, has also acknowledged some inconsistent approaches, at least in hearing examiner decisions which became final without further review by the Board. We note that such hearing examiner decisions have some weight when the Board has left them in effect, in that the Board has reserved to itself the sua sponte authority to review hearing examiner decisions to which no exceptions have been taken. 34 Pa. Code §95.98(d).

Board counsel places the greatest stress upon the passage in the Board's *Lower Allen* decision which found certain criteria to be managerial in nature, reading as follows:

> The chief directly formulates and assists in the formulation of policy, has overall responsibility for implementation of that policy, has acted on behalf of the employer in the past informal discussions, has overall responsibility for police personnel administration, and prepares the police budget. These duties are indisputably managerial in nature and clearly require separation of the bargaining unit representing the interests of the labor force.

8 Pa. Pub. Employee R. at p. 379. From that thoughtful pronouncement, we must take it that the Board's experienced and considered conclusion was that the key indicia of managerial status include:

—Policy formulation function;

—Overall responsibility for policy implementation;

—Management role in previous bargaining;

—Overall responsibility for personnel administration; and

—Budget-making function.

Our review of the Board's decisional history supports the identification of policy formulation,[1] policy implementation through program development[2] and budget-making[3] as indisputably constituting managerial functions; as to those matters, the Board's brief expresses no disagreement.

---

[1] *Cranberry Township,* 16 Pa. Pub. Employee R. ¶ 16149 (1985); *City of Bethlehem,* 16 Pa. Pub. Employee R. ¶ 16146 (1985); *Franklin Township,* 16 Pa. Pub. Employee R. ¶ 16145 (1985); *McSherrystown Borough,* 16 Pa. Pub. Employee R. ¶ 16123 (1985); *Ellport Borough,* 16 Pa. Pub. Employee R. ¶ 16065 (1985); *Montoursville Borough,* 16 Pa. Pub. Employee R. ¶ 16044 (1985); *Falls Township,* 15 Pa. Pub. Employee R. ¶ 15090 (1984); *Kennedy Township,* 15 Pa. Pub. Employee R. ¶ 15080 (1984); *Millvale Borough,* 14 Pa. Pub. Employee R. ¶ 14275 (1983); *Camp Hill Borough,* 14 Pa. Pub. Employee R. ¶ 14234 (1983); *Municipality of Monroeville,* 14 Pa. Pub. Employee R. ¶ 14129 (1983); *Coatesville Police Department,* 14 Pa. Pub. Employee R. ¶ 14058 (1983); *Municipality of Bethel Park,* 14 Pa. Pub. Employee R. ¶ 14042 (1983); *Township of Lower Merion,* 13 Pa. Pub. Employee R. ¶ 13276 (1982); *Upper Southampton Township,* 13 Pa. Pub. Employee R. ¶ 13091 (1982); *City of Chester,* 11 Pa. Pub. Employee R. ¶ 11013 (1979).

[2] *Chartiers Township,* 16 Pa. Pub. Employee R. ¶ 16030 (1985); *Cranberry Township,* 16 Pa. Pub. Employee R. ¶ 16149 (1985); *Montoursville Borough,* 16 Pa. Pub. Employee R. ¶ 16044 (1985).

[3] *Cranberry Township,* 16 Pa. Pub. Employee R. ¶ 16149 (1985); *City of Bethlehem,* 16 Pa. Pub. Employee R. ¶ 16146 (1985); *Franklin Township,* 16 Pa. Pub. Employee R. ¶ 16145 (1985); *Moon Township,* 16 Pa. Pub. Employee R. ¶ 16142 (1985); *Montoursville Borough,* 16 Pa. Pub. Employee R. ¶ 16044 (1985); *Falls Township,* 15 Pa. Pub. Employee R. ¶ 15090 (1984); *Millvale Borough,* 14 Pa. Pub. Employee R. ¶ 14275 (1983); *Municipality of Monroeville,* 14 Pa. Pub. Employee R. ¶ 14129 (1983); *Coatesville Police Department,* 14 Pa. Pub. Employee R. ¶ 14058 (1983); *Municipality of Bethel Park,* 14 Pa. Pub. Employee R. ¶ 14042 (1983); *Township of Lower Merion,* 13 Pa. Pub. Employee R. ¶ 13276 (1982); *Township of Middletown,* 11 Pa. Pub. Employee R. ¶ 11015 (1979); *City of Chester,* 11 Pa. Pub. Employee R. ¶ 11013 (1979).

### Previous Management Bargaining Role

On the other hand, the Board's answer and brief now seem to disown reliance on the past bargaining role index uttered by the Board in *Lower Allen*. There is no complaint concerning our omission of that factor from our listing in *Chartiers*. Board counsel here argues that such a test "should be rejected by this Court," thus advising that the Board does *not* consider its *Lower Allen* pronouncements to be the last word. Indeed, in this *Star Lodge* case, the Board decision quotes its later-stated view that bargaining history is only a suggestive factor, not a determinative one,[4] thus narrowing its *Lower Allen* opinion.

We agree. To give controlling weight to past bargaining history would tend merely to perpetuate existing misalignments.

### Personnel Administration—Hiring and Discipline

In *Lower Allen*, the Board also described "overall responsibility for police personnel administration" as one of the indices of management status. Although personnel administration undoubtedly involves the exercise of hiring and discipline functions, Board counsel here argues that those two functions are supervisory—that is, they may be vested in supervisory personnel as well as in managerial officers and therefore do not constitute an exclusive index of managerial status. To reach that view the Board looks to section 301(6) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563,

---

[4] *City of Wilkes-Barre*, 15 Pa. Pub. Employee R. ¶ 15013 at 31 (1983). The idea of past history being merely suggestive may have represented a retreat from the Board's earlier view that past inclusion in the bargaining unit "alone argues forcefully" for continued inclusion. *City of York*, 9 Pa. Pub. Employee R. ¶ 9050 at 98 (1978).

43 P.S. §1101.301(6), as being in pari materia with Act 111. PERA's section 301(6)—dealing with public employees other than police and firefighters—defines a supervisor as follows:

> (6) 'Supervisor' means any individual having authority in the interests of the employer to *hire,* transfer, suspend, layoff, recall, promote, discharge, assign, reward or *discipline* other employes or responsibly to direct them or adjust their grievances; or to a substantial degree *effectively recommend such action,* if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature but calls for the use of independent judgment. (Emphasis added.)

We therefore have again reviewed the existing pattern of Board decisions in an attempt to determine whether the Board, in actual practice, has eliminated from its conception of overall personnel administration the constitutent aspects of hiring and disciplinary functions.

We emphasize that we have looked at the underlying *findings of fact* in relation to the Board's actual *decisions* (and hearing examiner decisions left standing by the Board) to determine the true *holdings,* as distinguished from dicta.

Neither Board counsel's argument nor thorough restudy of the administrative decisions reveals any different explanation of what the Board might have meant in its *Lower Allen* case by "overall responsibility for police personnel administration." The Board doubtless well knows that overall personnel policy for state and local police is embodied primarily in the civil service statutes, and that the actual power to hire and also mete out suspensions and dismissals is vested in elected mayors, elected governing bodies and civil service

.commissions by those statutes. In other words, personnel *policies* are embodied in such laws and perhaps also in home rule charters and ordinances; such policies are not devised by police commanders whether they are managerial or not.

Hence, the Board has had to look at the scope of powers exercised by police commanders in *administering* the personnel policies of the laws.

Contrary to contentions in Board counsel's answer to the reargument petition, the hearing examiner in *Municipality of Monroeville,* 14 Pa. Pub. Employee R. ¶ 14129 (1983) determined that a chief's status was managerial on the basis of findings which included a determination that the chief, rather than subordinates, participated in the hiring function by recommending the selection of applicants for hiring and promotion, as well as by proposing standards for hiring. Consistently, a chief who lacked authority to make hiring recommendations was excluded from managerial status by the hearing examiner in *Youngsville Borough,* 13 Pa. Pub. Employee R. ¶ 13032 (1982).

In *Penn Township,* 9 Pa. Pub. Employee R. ¶ 9030 (1978), where the Board's actual decision placed the chief in the bargaining unit as a non-managerial officer, the Board's discussion nevertheless obliquely identified the hiring function with managerial status by stating:

> While the chief may make recommendations for hiring, discharge, etc., we are convinced that management of the police department rested in the Board of Supervisors.

Thus the Board, and also examiner decisions left standing and thus implicitly approved by the Board, have not definitively removed the personnel functions of hiring and discharge from the "overall responsibility for police personnel administration" which the Board identified with managerial status in its *Lower Allen* dictum.

The Board has understandably regarded the power to impose *minor* disciplinary sanctions as a feature of supervisory status, not managerial status. The Board regarded police lieutenants as merely supervisory in *Town of McCandless,* 10 Pa. Pub. Employee R. ¶ 10071 (1979) where their authority extended only to sending officers home for the day. Similarly, in *City of Chester,* 11 Pa. Pub. Employee R. ¶ 11013 (1979), the Board regarded police inspectors to be supervisory, rather than managerial, where their authority extended only to relieving an officer on duty. In *Chartiers Township,* 16 Pa. Pub. Employee R. ¶ 16030 (1985), the Board classed a chief as only supervisory because he could not impose more than "minor discipline." *Moon Township,* 16 Pa. Pub. Employee R. ¶ 16142 (1985), is a hearing examiner's decision which reflects a Board view that merely "issuing reprimands" is supervisory rather than managerial.

On the other hand, the Board has related functions regarding serious discipline to managerial status. In *Township of Lower Merion,* 13 Pa. Pub. Employee R. ¶ 13276 (1982), the Board excluded police lieutenants from the bargaining unit on the basis that they had managerial status, and one of the examiner findings approved by the Board was that recommendations made by the lieutenants concerning "serious discipline (i.e. suspension, dismissal)" had been approved by the governing body 99% of the time.

Hearing examiner decisions left standing by the Board regularly have associated serious disciplinary powers with management status. *Youngsville Borough,* noted above, found the police chief to be without managerial authority partly because he lacked disciplinary powers. *Coatesville Police Department,* 14 Pa. Pub. Employee R. ¶ 14058 (1983), was a hearing examiner decision which treated a police lieutenant as manager-

ial, noting that he possessed functions which "are an essential part of management," including "independent authority to . . . impose discipline. . . ." In *Millvale Borough,* 14 Pa. Pub. Employee R. ¶ 14275 (1983), even though the department was a small five-member one, the chief was excluded from the bargaining unit as managerial because he had effective power to make recommendations with respect to suspensions and discharges. Consistently, *McSherrystown Borough,* 16 Pa. Pub. Employee R. ¶ 16123 (1985), after discussing the full list of tests stated by the Board in *Lower Allen,* decided that a police chief was not managerial, partly because his mayor had overruled his recommendation that an officer be discharged.

Thus, careful study of the administrative history provides no solid basis for Board counsel's contention that the cases do "not support the notion that disciplinary responsibility is a managerial task." They do support the notion that effective administration or initiation of serious disciplinary action is managerial, while the authority to carry out field discipline on the street, as by temporarily relieving an officer of duty, constitutes the work of a supervisor.

Recognizing the desirability of looking to the Board's consistent pattern of actual *holdings* as our guidelines, we can arrive at a reasonable approximation of what the Board means by relating the Board's general phrase "overall personnel administration" partly to the specific regard which has been shown for serious discipline administration as a managerial factor.

By the same token, effective involvement in hiring is undoubtedly an element in the "overall personnel administration" function because the hiring function helps to determine the very identity of the persons who shall constitute the bargaining unit.

## Independent Representation of the Police Department to the Public

In *Township of Chartiers*, this court listed as managerial the public relations function where it consists of exercising "independence in representing the department to the public. . . ." 98 Pa. Commonwealth Ct. at 49, 510 A.2d at 886. Apparently misunderstanding the key elements of the criterion as thus expressed, the Board expresses a concern that we would class the performance of mere liaison and speechmaking functions as evidence of managerial status. Our statement of the criterion in *Chartiers* intended no such connotation because the conclusion we draw from the seemingly conflicting administrative decisions is consistent with the Board's view that the drafting and implementation of *policy* are managerial tasks. When public relations actions reveal policy independence in the commander, they are managerial, as distinguished from mere informational contacts with the public.

The Board decision in *Township of Lower Merion*, 13 Pa. Pub. Employee R. ¶ 13276 (1982), well illustrates the managerial role with respect to public relations because the Board there concluded that lieutenants were managerial and involved in the formulation and implementation of managerial programs where, among other things, a finding in the record (No. 31) was that they appeared before governmental and civic groups as departmental spokesmen "with authority to make commitments of the manpower and resources of the department." Consistently, on the other side of the coin, in *City of Bethlehem*, 16 Pa. Pub. Employee R. ¶ 16146 (1985), the Board stated that merely acting as liaison with citizen groups did not constitute an index of managerial status. Similarly, in the Board's *Town of McCandless* decision, merely making speeches at

schools, civic clubs and churches did not confer managerial status upon lieutenants.

Hearing examiner decisions left standing by the Board correctly display the same dichotomy.

In *Coatesville Police Department,* 14 Pa. Pub. Employee R. ¶ 14058 (1983), a lieutenant was classed as managerial when he had "instituted educational programs" and had "the authority to commit police manpower and resources" to such programs. Finally, a hearing examiner in *Cranberry Township,* 16 Pa. Pub. Employee R. ¶ 16149 (1985), decided that a police lieutenant was managerial where a lieutenant, independent of control by the chief, established a Crime Prevention Program and oversaw the expenditure of thousands of dollars for that program. Despite the compatibility of that decision with the line drawn by the Board itself between a managerial role dealing with the community and a supervisory or routine police officer function of merely imparting information to the community, Board counsel inexplicably seeks to disown *Cranberry Township* on the ground that, because no exceptions were filed, the Board had "no opportunity" to review it. Although the Board clearly is not bound by hearing examiner decisions, the Board cannot discard consistent trends in the work of its own hearing examiners by any claim that the Board is powerless to review them sua sponte, in view of 34 Pa. Code §95.98(d), permitting the Board to review any hearing examiner decision on its own motion.

Because our research has disclosed no Board decision and no hearing examiner decision contrary to our *Chartiers* identification of independence in dealing with the public as a managerial policy function, that criterion remains one properly included among the determinative indicia of managerial status.

### Budget Making and Purchasing Roles

In *Township of Chartiers,* we found that perform-
ance of an effective role in purchasing—as distinquished
from the mere making of purchasing suggestions—
emerged in Board and examiner decisions as related to
managerial status.[5] Of course, all concerned recognize
that under the municipal statutes and home rule
charters, the final say as to purchasing lies with govern-
ing bodies or other responsible elected officials. Subject
to that limitation, however, not even Board counsel ap-
pears to dispute the relevance of such a function to
managerial status.

Although elected executives or municipal managers
normally are centrally involved in the proposing of
budgets, and governing bodies are legally empowered
to adopt them, an effective advisory role in budget-
making, as well as in the companion fiscal function of
purchasing, serves usefully to identify the police com-
mander whose status is managerial. A shared responsi-
bility for the public budget would relate to membership
in an employee bargaining unit in a way which is obvi-
ously uncomfortable, if not incompatible.

### Restatement of the Indicia of Managerial Status

Accordingly, benefited by contributions of counsel
for both Board and Union in the course of reargument,
this court is enabled now to essay a restatement of the
functions which are distinctively managerial. That is,
the Board has classified the position as managerial when

---

[5] *Chartiers Township,* 16 Pa. Pub. Employee R. ¶ 16030
(1985); *Cranberry Township,* 16 Pa. Pub. Employee R. ¶ 16149
(1985); *North Coventry Township,* 16 Pa. Pub. Employee R.
¶ 16111 (1985); *Montoursville Borough,* 16 Pa. Pub. Employee R.
¶ 16044 (1985); *Coatesville Police Department,* 14 Pa. Pub. Em-
ployee R. ¶ 14058 (1983).

the named function is affirmatively among the powers of the position, and has rated the position as merely supervisory when the function is absent from those powers:

Policy Formulation—authority to initiate departmental policies, including the power to issue general directives and regulations;

Policy Implementation—authority to develop and change programs of the department;

Overall Personnel Administration Responsibility—as evidenced by effective involvement in hiring, serious disciplinary actions and dismissals;

Budget Making—demonstrated effectiveness in the preparation of proposed budgets, as distinguished from merely making suggestions with respect to particular items;

Purchasing Role—effective role in the purchasing process, as distinguished from merely making suggestions;

Independence in Public Relations—as evidenced by authority to commit departmental resources in dealing with public groups.

## Application of the Restated Criteria

In this case, the Board correctly pointed out that the hearing examiner's decision excluding captains from the bargaining unit, by treating them as managerial, was based upon the captains' job duties "which included the formulation and implementation of policy in the budget."

As noted in the Board's decision, the unique aspect here is that policy was promulgated through the consistent development of a consensus among the captains and the police commissioner. Moreover, as the Board stated, the mere fact that policy determinations are subject to review by a higher authority does not neces-

sarily negate managerial status. *Employees of Carlynton School District v. Carlynton School District,* 31 Pa. Commonwealth Ct. 631, 636, 377 A.2d 1033, 1035 (1977).

With respect to the captains' role in the budget process, the Board noted that the captains formulate budgets for their individual bureaus and work with the commissioner to determine priorities. The same consensus comes into play in reaching the budget content which the police commissioner submits to the city's fiscal authorities. The Board did not err in concluding that "the captains' direct involvement in the preparation of the budget is indicative of managerial status."

Because all the criteria of managerial status are seldom present in any one case, the Board did not err in deciding that the above-described policy formulation and budgeting roles were controlling, despite (1) public relations activity consisting merely of liaison work with citizen groups, and (2) inclusion of the captains in the bargaining unit for the past ten years. In accordance with the foregoing discussion, the Board noted that a mere liaison role—which here involved no independent authority to represent the department—was not indicative of managerial status. On the other hand, a limitation of authority in that one aspect does not conclusively negate managerial status. With respect to the inclusion of the captains in the bargaining unit heretofore, the Board has correctly recognized that the bargaining history can suggest the continued inclusion of contested job positions, but does not necessarily mandate perpetuation of that status.

Review of the record shows substantial evidence to support all of the hearing examiner's findings, as adopted by the Board, concerning the formation of policy, the making of budgets and other functions of the captains, including, as noted in Finding No. 28, that these

captains have effective authority to make recommendations as to serious disciplinary actions, recommendations generally followed by the police commissioner.

## Conclusion

Because the findings are supported by substantial evidence and in turn support the legal conclusion that the police captains in the City of Bethlehem are managerial employees, the order of the Board must be affirmed.

## ORDER

NOW, March 13, 1987, pursuant to reargument before the court en banc, the order of the Pennsylvania Labor Relations Board, No. PF-R-83-74-E, dated June 10, 1985, is affirmed.