124 Pa. Commonwealth Ct. 502 (1989)
556 A.2d 928
City of Pittsburgh, Petitioner
v.
Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.
No. 2061 C.D. 1988.
Commonwealth Court of Pennsylvania.
Argued February 10, 1989.
March 30, 1989.
Argued February 10, 1989, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.
Joseph F. Quinn, Assistant City Solicitor, with him, D.R. Pellegrini, City Solicitor, for petitioner.
John B. Neurohr, with him, James L. Crawford, for respondent.
Stanford A. Segal, Gatz, Cohen, Segal & Koerner, for intervenor, Firefighters, Local No. 1.
OPINION BY JUDGE CRAIG, March 30, 1989:
This case presents the question of whether the 159 captains, 24 battalion chiefs and 4 deputy chiefs in the *503 Pittsburgh Bureau of Fire should be excluded from the collective bargaining unit, the union representative of which is the Pittsburgh Firefighters, Local No. 1, International Association of Firefighters, AFL-CIO.
To request the exclusion of those positions, the city filed its petition for unit clarification with the Pennsylvania Labor Relations Board (PLRB) on November 12, 1985. After hearings, a hearing examiner issued a proposed order of unit clarification, finding that the positions were nonmanagerial and should remain within the bargaining unit. After the PLRB dismissed the city's exceptions and made the proposed order final, the city appealed.

Facts
The hearing examiner's findings of fact, describing the functions and relationships of the various fire bureau positions, are largely undisputed. To summarize the relationships and some of the functions stated in Findings of Fact Nos. 4-39, we here set forth a generalized table of organization, as follows:

 PUBLIC SAFETY DIRECTOR
 |
 DEPUTY DIRECTOR
 |
 FIRE CHIEF
 |
 | ---- ADMINISTRATIVE AIDE
 |
 ASST. DIR. FIRE SUPPRESSION ASST. DIR. FIRE PREVENTION
 |
 DEPUTY CHIEFS (4  Each supervises a platoon [shift].)
 |
 BATTALION CHIEFS (24  Each supervises one of 6 districts.)
 |
CAPTAINS (159) LIEUTENANTS (121)
(Each captain supervises (Each lieutenant supervises
an engine company  one a truck company,
vehicle, 3 or 4 firefighters.) 2 to 4 firefighters.)
 |
 FIREFIGHTERS (715)

Note: In a firehouse having both an engine and truck company, the captain is the senior supervisor of the house. Some firefighters are assigned to squad units.
*504 The city contends that, with captains, battalion chiefs and deputy chiefs included in the bargaining unit, the fire bureau has only one position of managerial status  that of the fire chief of the bureau. However, the Pittsburgh Bureau of Fire is no longer a separate department reporting directly to the mayor. As the foregoing table discloses, a recent reorganization of the city's executive branch resulted in the restoration of the position of public safety director as head of the Department of Safety, including the Bureau of Fire, along with Bureaus of Police, Emergency Medical Services and Administration.
In the public safety director resides the personnel management powers as to hiring and promotion, and also significant policy-making, planning and budgeting responsibilities. Along with the public safety director, the deputy director of the department and the fire chief, with the assistance of an administrative aide, also exercise managerial control over the bureau outside of the bargaining unit.
Also in the organization, as presented to the PLRB, are two additional positions outside of the bargaining unit, those of the assistant director for fire suppression and assistant director for fire prevention. As the titles indicate, and the hearing examiner found, these positions stand in the line of command between the fire chief and the deputies, with the assistant director for fire suppression concerned with the firefighting operation and the assistant director for fire prevention concerned with fire prevention activities headed by a captain of fire prevention. In Firefighters Local Union, No. 1 v. Civil Service Commission of City of Pittsburgh, 118 Pa. Commonwealth Ct. 498, 545 A.2d 487 (1988), this court recently held that the applicable statutes do not permit the city to place these positions outside of the competitive civil service; our decision did not prohibit the creation of such *505 positions but simply held that the laws permitted only the fire chief to be exempted from civil service and thus required these positions, like those of the deputy chiefs and lower positions in the fire department, to be under civil service protection.
The position of deputy director is to contain an office of professional responsibilities, with a chief inspector and a safety administrator; the chief inspector will be responsible for, among other things, making sure that the regulations, policies and the procedures of the fire bureau are in place and are in operation. The fire bureau will be subject to ongoing inspection to insure implementation of orders of the fire chief.
The Service and Administration Bureau, under the director of the public safety, will be responsible for education and training, for communications and also for research and development throughout the entire department, including the fire bureau.
Each of the four deputy chiefs in the fire bureau heads a platoon, which essentially consists of the complete manning of the fire department during a given shift. Deputy chiefs respond to downtown fires and to multiple alarms in other districts of the city. The operational responsibilities of a deputy chief include taking charge of a single alarm fire, controlling deployment during times of two or more multiple alarm fires, and calling in additional resources and related agencies, such as emergency medical services, police and utility companies. The deputy chiefs confer with the fire chief and are responsible for disseminating updates, changes and new regulations.
Battalion chiefs report to the deputy chiefs daily. Each battalion chief is in charge of one of the districts, composed of a number of firehouses or fire companies. Battalion chiefs supervise payroll records and prepare forms for requesting personnel changes. Battalion chiefs *506 also answer alarms and supervise at fires, with the authority to redeploy men and equipment in their districts. A battalion chief also has the authority to call in other city departments and related agencies as needed.
Captains and lieutenants supervise fire companies. A given fire company consists of one apparatus, which may be an engine (pumper) or a truck. The captains supervise engine companies, consisting of three or so firefighters. The lieutenants supervise truck companies. Ten firehouses contain only engine companies. In the twenty houses containing both an engine company and a truck company, the captain is the ranking supervisor.

Managerial Status Criteria
In Fraternal Order of Police, Star Lodge No. 20 v. Pennsylvania Labor Relations Board, 104 Pa. Commonwealth Ct. 565, 522 A.2d 697 (1987) (Star Lodge II), the Commonwealth Court en banc undertook a comprehensive review of the indicia of managerial status which the PLRB has developed in resolving unit determination and unit clarification questions. Those decisions related to the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, as amended, 43 P.S. §§211.1-211.13, and the Act of June 24, 1968, P.L. 237, 43 P.S. §§217.1-217.10 (Act 111).
The tests spelled out in Star Lodge II had much of their origins in the PLRB's decision in Lower Allen Township, 8 Pa. Pub. Employee R. 376 (1977), aff'd in part, 11 Pa. Pub. Employee R. 17 (No. 882 Civil 1979, Court of Common Pleas of Cumberland County, filed November 28, 1979), and also were founded upon our earlier comprehensive review of PLRB decisions in Township of Chartiers v. Pennsylvania Labor Relations Board, 98 Pa. Commonwealth Ct. 44, 510 A.2d 884 (1986), petition for allowance of appeal denied, 513 Pa. 643, 521 A.2d 934 (1987) (Chartiers).
*507 In Star Lodge II, this court carefully concluded that the PLRB
has classified the position as managerial when the named function is affirmatively among the powers of the position, and has rated the position as merely supervisory when the function is absent from those powers:
Policy Formulation  authority to initiate departmental policies, including the power to issue general directives and regulations;
Policy Implementation  authority to develop and change programs of the department;
Overall Personnel Administration Responsibility  as evidenced by effective involvement in hiring, serious disciplinary actions and dismissals;
Budget Making  demonstrated effectiveness in the preparation of proposed budgets, as distinguished from merely making suggestions with respect to particular items;
Purchasing Role  effective role in the purchasing process, as distinguished from merely making suggestions;
Independence in Public Relations  as evidenced by authority to commit departmental resources in dealing with public groups.
104 Pa. Commonwealth Ct. at 577-78, 522 A.2d at 704.
This court's conclusions were based on the premise of due deference to the expertise of the PLRB in the matter of bargaining unit determination. Accordingly, the first four of the above-listed criteria  policy formulation, policy implementation, overall personnel administration and budget making  correspond with the same four criteria as enunciated by the PLRB in Lower Allen. Although the PLRB has, at times, appeared to regard its statement of indicia in Lower Allen to be exhaustive, *508 extensive scrutiny of every one of the administrative decisions relating to unit determination, comprehensively annotated in Chartiers and Star Lodge II, has also identified an effective purchasing role and public relations commitments as two additional criteria which have been meaningful. Only on points of law was this court required to reject two lesser Lower Allen criteria, namely, as to (1) a rebuttable presumption making a distinction between police departments with ten or more members and those of less than ten members, which we rejected as arbitrary in Chartiers, and (2) giving weight to a particular supervisor's past bargaining role, a circular reasoning approach rejected in Chartiers and more recently rejected by the PLRB itself, as we noted in Star Lodge II, 104 Pa. Commonwealth Ct. at 570, 522 A.2d at 701.

Application of the Criteria
When the Star Lodge II and Chartiers criteria are applied to this case, the soundness of the PLRB determination is evident. The fire captains, functioning primarily as the supervisors of single firefighting vehicles, are clearly field supervisors rather than managers. Although their frontline importance in leading the firefighters, who confront and subdue fires and catastrophies, is undisputed, the captains have no role in budgetmaking, personnel hiring and dismissals or in the formulation and implementation of policy. Like other supervisors, their relationship to public relations, purchasing and budgetmaking involves making recommendations, not an exercise of any power to make commitments with respect to budget or public relations.
Examination of the functions of the battalion chiefs and deputy chiefs reveals that they too function essentially as field supervisors, directing firefighting operations as they affect fire scenes and other portions of the *509 city, although on a broader scale than the operational duties of the captains.
The management levels above the deputy chiefs  consisting of the public safety director and the fire chief  understandably look to the battalion chiefs and deputy chiefs for recommendations with respect to purchasing budget personnel deployment and policy development, but the record shows that battalion and deputy chiefs have no decision-making powers in those management areas. Budgetmaking resides in the public safety director, as department head, working with the fire chief. By law, the public safety director, within the strictures of civil service, exercises hiring and promotional powers in the field of personnel administration, with disciplinary actions and dismissals being governed by the actions of civil service bodies, consisting of trial boards and the Civil Service Commission. Policy formulation and implementation decisions also reside at levels above the operational firefighting roles of the deputy chiefs, as the record shows.
The powers and duties of battalion and deputy chiefs are indeed crucial because they direct the elements of firefighting which are essential to the preservation of life and property, such as the engines and trucks and other specialized vehicles, the deployment of fire companies, the apportionment of firefighting power when the bureau is confronted with two or more substantial fires at the same time, and many other frontline command matters. But these frontline matters are not management matters as the PLRB and this court have consistently viewed them.
Accordingly, the hearing examiner and the board reached a sound conclusion in applying the foregoing criteria to the facts of this case.
*510 Finally, the city has contended that, with respect to the Act 111 organization involved in this case, the PLRB and this court should read Act 195, Act of July 23, 1970, P.L. 563, in para materia with Act 111, with particular reference to section 301(16) of Act 195, 43 P.S. §1101.301 (16), which defines "Management level employee" not only by stating that it includes "any individual who is involved directly in the determination of policy or who responsibly directs the implementation thereof," but also by stating that a "Management level employee . . . shall include all employees above the first level of supervision." We agree with the board's reliance upon Geriot v. Council of Borough of Darby, 491 Pa. 63, 417 A.2d 1144 (1980), for the proposition that Act 111 and Act 195 are not to be read in para materia, considering the sharp distinctions in the coverage and qualitative import of the two statutes. We also agree with the PLRB that the legal evolution of the tests of management status under Act 111, in Lower Allen, Chartiers and Star Lodge II, has developed independently of Act 195, and with recognition of the specialized nature of the safety services covered by Act 111.

Conclusion
Pursuant to review of the facts presented by this record and the applicable law, this court must conclude that the decision of the PLRB should be affirmed.

ORDER
NOW, March 30, 1989, the final order of the Pennsylvania Labor Relations Board, dated July 27, 1988, at Case No. PF-U-85-89-W, is affirmed.