547 A.2d 887

City of DuBois, Appellant *v.* James R. Beers, Appellee.

*Toni M. Cherry*, with her, *Edward V. Cherry, Gleason, Cherry & Cherry, P.C.*, for appellant.

*Robert M. Hanak*, with him, *Matthew B. Taladay*, for appellee.

OPINION BY SENIOR JUDGE NARICK, September 27, 1988:

Appellee James R. Beers (Beers) was employed as the Chief of Police by the City of DuBois (City), Appellant herein, a position he had held since 1978. While on duty on January 2, 1985, Beers responded to a report that a gunman was holding hostages at a local business college and that shots had been fired. Armed with a shotgun, Beers entered the building alone, confronted and disarmed the gunman. Some three weeks later, on January 20, 1985, Beers suffered a stroke and was hospitalized. He was unable to return to work until July 11, 1986 and sought full salary and medical benefits under the so-called Heart and Lung Act.[1]

The City refused to pay these benefits on the grounds that it did not consider Beers' injury to be work-related. Instead, Beers was paid for all accrued sick leave, exhausting those benefits. Beers sued the City in the Court of Common Pleas of Clearfield County to recover Heart and Lung Act benefits on the grounds that his stroke was brought on by the stress of his job generally and by the encounter with the gunman specifically.

---

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §637.

Beers' suit included an additional count involving his salary. In January 1984, the City and its police bargaining unit submitted wage and fringe benefit issues to an arbitration panel under the provisions of Act 111.[2] The arbitrators awarded certain salary increases to the bargaining unit members. Because neither Beers' name nor the chief of police position was specifically mentioned in the contract, the arbitrators' award was silent as to whether Beers was included, and the City took the position that he was not, despite the fact that he had been covered in prior years. Beers sought a declaration by the trial court that he was a member of the police bargaining unit and therefore entitled to the benefits of the arbitration award.

The trial court determined that Beers was entitled to Heart and Lung Act benefits and that he was a member of the police bargaining unit, entitling him to the benefits of the arbitration award. Timely motions for post-trial relief[3] were filed by the City. The trial court modified its order to provide for a credit to the City for sick leave benefits it had paid to Beers against the compensation awarded and reinstated Beers' accrued sick leave. The City has appealed from this order, presenting four issues for our review.

The City first argues that the trial court erred in dismissing three of the issues it raised in its motion for post-trial relief for failure to preserve the issues by moving for a compulsory non-suit at the conclusion of Beers' case. These three issues were:

---

[2] Act of June 24, 1968, P.L. 237, 43 P.S. §§217.1-217.10 (relating to collective bargaining by policemen and firemen).

[3] The City originally filed exceptions to the trial court's order. In order to comply with Pa. R.C.P. No. 227.1, the trial court allowed the City to amend the title of its pleading to "Motion for Post-Trial Relief."

4. That in finding that the Plaintiff sustained a work-related injury, the Court went against the provisions of the Heart and Lung Act of 1935, as amended;

5. That the Court erred in concluding that the Plaintiff suffered a heart attack as a work-related injury when said heart attack was sustained when Plaintiff was not on duty and all evidence put forth at trial supported a conclusion that the heart attack was not suffered by the Plaintiff while he was at his job for the City of DuBois;

6. The findings of the Court were contra to the case law in this area and, in particular to the findings of the Supreme Court in Kurtz v. City of Erie, 389 Pa. 557, 133 A.2d 172 (1957). . . .

The trial court did not find the third issue raised by the City in its post-trial motions to have been waived. The City stated this issue as follows: "The Court erred in finding that the Plaintiff was disabled due to a work-related injury as such a finding was contrary to the weight of the evidence presented at trial. . . ." Because all four of these issues raise essentially the same question, *i.e.* whether Beers' stroke was work-related, we view the alleged error as necessarily harmless.

The second and third issues raised by the City are closely related. It argues that the 'trial court erred in concluding that Beers' stroke was a work-related injury for purposes of both the full-salary benefits and reimbursement of medical expenses under the Heart and Lung Act. We will treat these issues as one in that both will be resolved by our determination of whether the trial court properly found a work-related injury.

In reviewing the trial court's order here, we are guided by the following summary of our scope of review:

Questions as to the sufficiency of proof are ordinarily within the discretion of the Trial

Court and will not be reviewed by an appellate court unless there is a clear absence of proof to support the ruling. . . . Pennsylvania courts have long recognized the broad discretion given to the fact-finding Trial Court, that is a judge sitting without a jury. . . .

*Brady v. Borough of Dunmore,* 84 Pa. Commonwealth Ct. 331, 336, 479 A.2d 59, 62 (1984) (citations omitted).

The thrust of the City's argument is that the court erred in accepting the medical testimony of Dr. Bradley, Beers' treating physician, because the doctor's testimony was equivocal and, therefore, legally insufficient to establish a causal connection between Beers' employment and his stroke.

Preliminarily, we note that Beers objects to this standard of proof, which is routinely applied in workmen's compensation cases. *See, e.g., Lewis v. Workmen's Compensation Appeal Board,* 508 Pa. 360, 498 A.2d 800 (1985). Our research has disclosed, however, that this standard of proof is not limited to the area of workers' compensation law. For example, our Supreme Court held long ago in *Florig v. Sears, Roebuck & Co.,* 388 Pa. 419, 423-24, 130 A.2d 445, 447 (1957), a trespass action for personal injuries, that "[w]here there is no obvious causal relationship, unequivocal medical testimony is necessary to establish the causal connection . . ." (Emphasis, footnote and citation deleted.) *See also Smith v. German,* 434 Pa. 47, 253 A.2d 107 (1969). We are satisfied, especially given the close relationship in subject matter between the Heart and Lung Act and The Pennsylvania Workmen's Compensation Act,[4] that the refinements and clarifications of that standard of proof which have been developed through workers' compensation cases should apply to Heart and Lung Act cases where the issue of whether a disability is work-related is involved.

---

[4] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1-1031.

The statutory language which governs the instant matter reads, in part, as follows:

> (a) . . . [A]ny policeman, . . . of any county, city, borough, town or township, who is injured in the performance of his duties . . . and by reason thereof is temporarily incapacitated from performing his duties, shall be paid . . . by the county, township or municipality, by which he is employed, his full rate of salary, . . . until the disability arising therefrom has ceased. All medical and hospital bills, incurred in connection with any such injury, shall be paid . . . by such county, township or municipality.
>
> . . . .
>
> (b) In the case of . . . salaried policemen . . . who have served for four consecutive years or longer, diseases of the heart . . . contracted or incurred by any of them after four years of continuous service as such, and caused by extreme overexertion in times of stress or danger . . . arising directly out of the employment of any such . . . policeman . . . shall be compensable in accordance with the terms hereof. . . .

53 P.S. §637. The City argues that Dr. Bradley's testimony, when read as a whole, is equivocal because he was unable to positively relate Beers' stroke to the job-related incident in disarming the gunman. Therefore, because Beers' condition did not "aris[e] directly out of [his] employment" as subsection (b) quoted above requires, Beers would be ineligible for benefits.

We have carefully reviewed the doctor's testimony and must conclude that Dr. Bradley unequivocally attributed Beers' stroke to his employment. He testified that the primary cause of Beers' stroke was hypertension. The hypertension, in turn, was caused primarily by job-related stress. (The doctor also mentioned arteri-

osclerosis, hardening of the arteries, as an additional possible cause of the hypertension. He stated, however, that he could not be sure that Beers had that condition, and that his cholesterol level was normal. He assumed, because of Beers' age and diabetic condition, that it was present to some degree.) Dr. Bradley first saw Beers in 1982, when he was treated for hypertension and diabetes. The doctor discussed Beers' job-related stress with him at the time, advising him to take more time off and try not to remain involved with work problems at home. He prescribed medication for the hypertension, which brought the condition under control. Although Dr. Bradley admitted on cross-examination that he was not aware of other sources of stress in Beers' life, and that non-job-related stress could be a factor in his hypertensive condition, we do not believe, as the City contends, that that testimony must therefore negate Dr. Bradley's conclusion that job-related stress was the primary causative factor. There is no other evidence in the record with respect to other sources of Beers' stress, and a doctor certainly need not rule out all other possible causes of a condition in order to express a legally competent, unequivocal opinion. Dr. Bradley testified to an awareness of Beers' job-related stress in general and of the specific incident with the gunman and opined that Beers' hypertension, which caused his stroke, was work-related.

The question of whether medical testimony is unequivocal is one of law, and, therefore, subject to our review. *Lewis.* In making that determination, we must review the testimony as a whole. *Id.* The City argues that the trial court based its decision on a few words of Dr. Bradley's testimony taken out of context. We disagree. Although, as summarized above, the doctor admitted that factors other than job-related stress could have caused Beers' hypertension, he never waivered from his

opinion that, in fact, the job-related stress did cause the condition. In contrast to the physician in *Lewis,* who continually vacillated as to the cause of the claimant's injury, Dr. Bradley did not deviate from his opinion that work-related stress ultimately led to his stroke, although he admitted that other causes would be possible as well. We have held that " 'it is not the law . . . that every utterance which escapes the lips of a medical witness on a medical subject, must be certain, positive, and without reservation, exception or peradventure of a doubt.' " *Heath v. Workmen's Compensation Appeal Board (Agway, Inc.),* 100 Pa. Commonwealth Ct. 524, 527, 514 A.2d 1021, 1023 (1986) (citation omitted). In *Heath,* we concluded that a physician's testimony was not equivocal, even though, as here, the doctor could not rule out non-work-related factors as possible contributors to the aggravation of the claimant's injuries. We must reach the same result here and conclude that Dr. Bradley's testimony was not equivocal.

The trial judge accepted Dr. Bradley's testimony and relied upon it for his conclusion that Beers' stroke was work-related. Having concluded that this testimony was legally competent to support that conclusion, we affirm that portion of the trial court's order granting full salary and medical benefits to Beers for the duration of his temporary disability in accordance with the provisions of the Heart and Lung Act.

The question of what Beers' "full salary" should be for the period he was incapacitated is the final aspect of this case, and the fourth issue raised by the City. The City argues that the trial court erred in finding that Beers was a member of the police bargaining unit and therefore entitled to the benefits of the arbitration award. We note that the City has not disputed the amount of Beers' base salary, $18,750, but merely his entitlement to the additional $3200 due under the arbitration award.

At trial, both parties introduced the testimony of persons involved in police negotiations with the City over the years. Beers attempted to prove that he was included in the bargaining unit because of past practice. The City, on the other hand, relied on the collective bargaining agreements themselves in order to demonstrate that, while Beers and other chiefs of police had been specifically included in prior contracts, Beers was not specifically included after 1982. The trial court accepted Beers' position. We believe that the trial court was without jurisdiction to decide the question of whether Beers was a member of the collective bargaining unit.[5]

We have held, in dealing with cases arising under Act 111, that the Pennsylvania Labor Relations Board (PLRB) is the exclusive tribunal for the purpose of seeking redress of an unfair labor practice. *Fraternal Order of Police, Star Lodge No. 20 v. Pennsylvania Labor Relations Board,* 104 Pa. Commonwealth Ct. 565, 522 A.2d 697 (1987); *Barron v. City of Philadelphia,* 85 Pa. Commonwealth Ct. 182, 481 A.2d 379 (1984). Similarly, the PLRB is charged with the responsibility of determining the appropriateness of a particular bargaining unit, including positions included or excluded therefrom. *City of Clairton v. Pennsylvania Labor Relations Board,* 107 Pa. Commonwealth Ct. 561, 528 A.2d 1048 (1987); *Philadelphia Fire Officers Union Appeal,* 83 Pa. Commonwealth Ct. 274, 477 A.2d 47 (1984). Because Beers has, in essence, alleged that the City committed an unfair labor practice in unilaterally removing his position from the bargaining unit, *see Clairton,* we be-

---

[5] While neither party has raised this issue, a question of jurisdiction may be raised *sua sponte* at any time during the appeals process. *See Chirico v. Board of Supervisors of Newtown Township,* 63 Pa. Commonwealth Ct. 591, 439 A.2d 1281 (1981), *aff'd in part,* 504 Pa. 71, 470 A.2d 470 (1983).

lieve that jurisdiction over this claim properly lies in the PLRB.[6]

Accordingly, because the trial court did not have jurisdiction to decide the issue of Beers' entitlement to the benefits of the arbitration award, *i.e.* $3200, we must reverse that portion of its order. In all other respects, the order is affirmed.

### ORDER

AND NOW, this 27th day of September, 1988, the order of the Court of Common Pleas of Clearfield County in the above-captioned matter is affirmed in part and reversed in part in accordance with the terms of the foregoing opinion.

---

[6] One of the City's arguments in support of removing Beers from the bargaining unit is that he became a department head under a City ordinance. Presumably, this argument is meant to imply that his duties were managerial in nature, and that it would be inappropriate to include him in the bargaining unit. This, however, is a factual inquiry, a determination best left to the PLRB's expertise. *Fraternal Order of Police; Township of Chartiers v. Pennsylvania Labor Relations Board,* 98 Pa. Commonwealth Ct. 44, 510 A.2d 884 (1986).