**Thomas H. MILLER, Appellant,**

v.

**BETHLEHEM CITY COUNCIL.**

Commonwealth Court of Pennsylvania.

Argued May 16, 2000.
Decided Aug. 18, 2000.
Reargument Denied Oct. 25, 2000.

George A. Heitczman, J.D., Bethlehem, for appellant.

Christine M. Alvarez, Bethlehem, for appellee.

BEFORE McGINLEY, Judge, LEADBETTER, Judge, and JIULIANTE, Senior Judge.

LEADBETTER, J.

Thomas H. Miller appeals from the order of the Court of Common Pleas of Northampton County, which vacated the decision of the Bethlehem City Council (Council) to deny Miller's application for disability pension benefits and remanded the matter for further record development before the Council and the Bethlehem Police Pension Fund Association (Pension Board). After review, we reverse.

Miller began his service as a City of Bethlehem police officer in March 1988. In November 1997, Miller applied for a disability pension based upon a mental disability. The Pension Board notified Miller that he was not eligible for a disability pension because he did not have ten years of service. Thereafter, the Pension Board reconsidered Miller's request and voted to appoint three doctors to examine Miller pursuant to Bethlehem City Ordinance Section 153.09. When four months passed without the appointment of any physicians, Miller filed a complaint in mandamus requesting that the Pension Board be directed to appoint the required physicians so that his application could be processed. Miller subsequently agreed to hold his complaint in abeyance after the Pension Board assured him that it would appoint the necessary physicians. The Pension Board then appointed the following to examine Miller: David Doyle, D.O., a psychiatrist, Ronald Esteve, Ph.D., a psychologist, and Joanne Regina, Ph.D., another psychologist.

Although there was some disagreement among the doctors regarding the cause of Miller's disability, they all agreed that his psychiatric condition disabled him from performing his job as a police officer. Specifically, Dr. Doyle ultimately rendered a report opining that Miller presented with signs and symptoms of post-traumatic stress disorder and that his current emotional illness resulted from the trauma he experienced while working as a police officer. Thereafter, Dr. Esteve opined in his report that "Miller suffers from a mental incapacity which has been incurred by reason of the performance of his police duties … He further likely suffers from both a Major Affective Disorder in the form of a Bi–Polar Disorder and from Characterological Disorder that left him quite vulnerable for the above disorder due to limited psychological resources."[1] R.R. 335a. Finally, Dr. Regina concluded in her report that Miller is mentally incapacitated, however, his incapacity is not solely caused by his work as a police officer, but by extensive prior prescription drug use as well as an exacerbation of his pre-existing bi-polar disorder. The Pension Board subsequently denied Miller's application for benefits on the basis of Dr. Regina's report and Miller appealed the Pension Board's decision to the City Council.

City Council reviewed the record of the Pension Board and held hearings on the matter, which included the testimony of Dr. Paul Gross, Miller's treating psychiatrist, Dr. Regina and the Police Commissioner.[2] Essentially, Dr. Gross testified that Miller suffers from two psychiatric conditions, a bi-polar disorder and an adjustment disorder. According to Dr. Gross, although Miller's bi-polar disorder was not caused by his police work, it was aggravated by it. On the other hand, Dr. Gross indicated that the adjustment disorder "was very much caused by the stress

1. Earlier in his report, Dr. Esteve also noted that he found strong evidence that Miller suffers from post traumatic stress disorder, which he appears to attribute to Miller's exposure to a series of events while working as a police officer.

2. Miller objected to Dr. Regina's testimony on the basis that it was not competent because she was not a "physician," however, City Council overruled the objection, concluding that Miller had waived this requirement by allowing himself to be examined by Dr. Regina.

of his police work." R.R. 76. Importantly, Dr. Gross opined that although the two diagnoses were simultaneous,

> the one that gives him the most trouble at this point would be the adjustment disorder. The bi-polar disorder has been relatively stable with medication and has not been a prime concern. The one that has been a difficult one based upon his employment is his stress disorder.

R.R. 89. Dr. Regina essentially testified consistently with her prior report. Specifically, she opined that Miller suffered from a pre-existing bi-polar disorder and anxiety disorder, which were exacerbated by his police work.

Council found that Dr. Regina's testimony was relevant and probative to the issues before it. Council then found that Miller suffered from a mental incapacity prior to becoming a police officer and that his duties as a police officer exacerbated his pre-existing mental impairment, but were not the cause of it.[3] Based on its findings, City Council concluded that although Miller was totally disabled from his job due to his mental incapacity, he was not entitled to benefits because his disability was not caused solely by his police work.

On appeal to the court of common pleas, Miller argued that Council's decision should be reversed because: (1) the Pension Board failed to appoint three physicians to examine him as required by the City Ordinance, (2) Council relied upon incompetent evidence in basing its decision on the testimony of Dr. Regina, and (3) Council improperly disregarded competent, medical evidence from two

physicians, namely Drs. Gross and Doyle. Although the court of common pleas concluded that Dr. Regina's testimony was relevant, competent and properly considered, it held that the Pension Board's failure to follow the City Ordinance and obtain the sworn statement of three physicians to support its decision violated Miller's due process rights. The court further concluded that since City Council's decision was based in part upon the recommendations of the Pension Board, its decision was not based upon a complete and adequate record. Therefore, common pleas vacated City Council's decision and remanded the matter in order for a full, proper and complete record to be developed before the Pension Board and City Council.[4]

Prior to addressing the arguments raised on appeal, the following pertinent legislative enactments must be noted. First, Section 4303.2 of the Third Class City Code (Code)[5] provides:

> (a) Notwithstanding any provision of this Act, any police officer who becomes totally disabled due to injuries sustained in the line of duty shall be deemed to be fully vested in the police pension fund, regardless of the actual number of years of credited service, and shall be eligible for immediate retirement benefits.

> (b) Claims under this section shall be decided by the governing body of the city. Proof of disability shall be by competent medical evidence provided by the claimant. The governing body of the city may at any time have the claimant examined by its own physician.

---

**3.** Reviewing Council's decision in its entirety, and particularly in light of the evidence presented, we view Council's statement that police work did not cause Miller's disability not as a finding of fact but as a mixed conclusion of law regarding the appropriate legal standard of causation and fact (i.e., that sole cause must be established and Miller failed to meet this standard). If viewed as a factual determination that police work was not a substantial contributing factor to the disabili

ty, it would be clear that there is no substantial evidence to support such a finding.

**4.** The court's order was subsequently certified for immediate appeal to this court pursuant to 42 Pa.C.S. § 702(b).

**5.** Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 39303.2. Section 4303.2 was added by Section 1 of the Act of October 3, 1988, P.L. 735.

(c) Claims under this section may be brought as the regulations of the City Council prescribe. Hearings and appeals shall be as provided in Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedures).

. . . .

(e) Definitions—as used in this section, "total disability" shall mean permanent mental or physical impairment which renders the police officer unable to perform his duties.

53 P.S. § 39303.2. The relevant Bethlehem City Ordinance provides in turn as follows:

Whenever any member of the police force of the City becomes physically or mentally incapacitated, from injuries received or disease contracted in the actual performance of his duties and by reason of the performance of his duties without fault or misconduct on his part, from performing his duties in the Police Department, the Police Pension Fund Association may, in its discretion, retire or honorably discharge such member upon submission to it of substantial proof of such member's physical disability or mental incapacity.

. . . .

Proof of such physical disability or mental incapacity shall consist of the sworn statement of three (3) practicing physicians, selected by the Association, after examination had by them of the policeman, that such policeman is in a condition of health which permanently disables him from performing the duties of his position. . . .

City Ordinance, § 153.09. The City Ordinance further provides that:

Any policeman aggrieved by any ruling or action of the Police Pension Fund Association regarding the Fund and his relation thereto, shall have the right to a hearing before Council, to be held within ten days of his written request therefor, which he may attend in person and be represented by counsel, and may further require the attendance of any witnesses on his behalf by subpoena to be issued by Council . . . Minutes and records shall be kept of testimony and facts produced, and Council may thereupon make such order and ruling in the matter as may seem just and lawful.

City Ordinance, § 153.15.

On appeal, Miller argues that the trial court and City Council erred in accepting the opinion of a psychologist regarding the cause of his disability because the Code requires that the cause of a disability be proven by "competent medical evidence," which must be provided by a physician. Noting that Section 1991 of the Statutory Construction Act, 1 Pa.C.S. § 1991, does not define a "physician" to include a licensed psychologist, Miller argues that the second and third sentences of subsection (b) of Section 4303.2 of the Code must be construed together such that the phrase "competent medical evidence" can only mean evidence provided by a licensed physician.[6] Therefore, according to Miller, not only did common pleas and City Council misapply the evidentiary standard contained in Section 4303.2(b) of the Code, but City Council's decision is not supported by competent evidence of record. Although we agree that Council's decision is not supported by competent evidence, we reach that conclusion by a somewhat different path.

First, we agree with Miller's construction of Section 4303.2(b), but not the conclusion he draws from it. After a review of the Medical Practice Act of 1985, Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. §§ 422.1–422.45, the Professional Psychologist Practice Act, Act of March 23, 1972, P.L. 136, *as amended*, 63 P.S. §§ 1201–1218, as well as the relevant provisions of the Pennsylvania Code,

---

**6.** That portion of Section 4303.2(b) provides "Proof of disability shall be by competent medical evidence provided by the claimant. The governing body of the city may at any time have the claimant examined by its own physician."

specifically 49 Pa.Code §§ 17.1–17.25, 41.1–41.59, and the definition of the word "medical" as contained in Webster's Third New International Dictionary (1993), we conclude that the phrase "competent medical evidence" requires evidence provided by a licensed physician and not a licensed psychologist. Nonetheless, pursuant to Section 4302.2(b) of the Code, the *claimant* bears the burden of proving that he is disabled with competent medical evidence. In the instant case, it is clear that Miller met this burden through the testimony of Dr. Gross, a licensed psychiatrist. Indeed, there is no dispute that Miller is disabled, as every doctor who rendered a report or opinion opined that he was totally disabled from his position and a finding to that effect was made by City Council. Therefore, under the Third Class City Code, claimant satisfied his burden of proving that he is disabled from his position. The real issue in this case, however, is not disability but causation. We note that the Code, as written, requires only that the claimant's *disability* be proven by competent medical evidence; the statute is completely silent regarding the type of evidence required to establish the *cause* of the disability. Even more fundamentally, however, while the statute mandates that claimant establish disability with medical evidence, it does not preclude Council from considering additional competent evidence, medical or otherwise, in evaluating the claim.[7] Thus, were we to find Dr. Regina's testimony to be competent evidence [to disprove causation], we would find no error

in Council's reliance upon it. However, we do not so find.

The flaw in denying benefits based upon Dr. Regina's evidence lies not in her credentials but in her testimony. Pursuant to Section 4303.2(a), "any police officer who becomes totally disabled due to injuries sustained in the line of duty shall be deemed to be fully vested in the police pension fund ... and shall be eligible for immediate retirement benefits." 53 P.S. § 39303.2(a). The plain language of Section 4303.2(a) does not require that a police officer's disability result *solely* from injuries sustained in the line of duty, nor do we interpret it in that fashion. Other than the City of Philadelphia's Pension Ordinance, which expressly provides that an employee is entitled to service-connected disability retirement benefits only where the incapacity results "solely from the performance of the duties" of the position, our research has failed to reveal any caselaw interpreting enactments similar in language to the Third Class City Code to require that a work-related disability be caused *solely* by the performance of work responsibilities. Neither the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626, nor the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638, are interpreted to provide that a work-related disability is compensable only if caused solely by the duties of the position.[8] Instead, both the

---

7. For example, if a physician were to testify that a claimant could not engage in physical activities such as lifting, bending, etc., the Council could certainly consider surveillance tapes showing him engaged in such pursuits.

8. Section 301(c)(1) of the Workers' Compensation Act, 77 P.S. § 411(1), provides:

The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the in-

jury; ... The term "injury arising in the course of his employment," ... shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, ...

Similarly, Section 1 of the Heart and Lung Act, 53 P.S. § 637(a), provides:

"Any member of the State Police Force, any enforcement officer or investigator employed by the Pennsylvania Liquor Control Board ... who is injured in the performance of his duties ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid by the Commonwealth of Penn-

Workers' Compensation Act and the Heart and Lung Act are interpreted to provide that an employer is liable for an employee's disability when the disability is caused by a combination of work-related and non-work-related factors, if the work-related factor was a substantial contributing factor to the disability (regardless of whether the employee was susceptible to a specific injury due to age or a pre-existing condition). *See generally City of Philadelphia v. Workers' Compensation Appeal Bd. (Cronin),* 706 A.2d 377 (Pa.Cmwlth.1998), *Povanda v. Workmen's Compensation Appeal Bd. (Giant Eagle Markets, Inc.),* 146 Pa.Cmwlth.320, 605 A.2d 478 (1992), *City of DuBois v. Beers,* 120 Pa.Cmwlth. 103, 547 A.2d 887 (1988), and *Miller v. Workmen's Compensation Appeal Bd. (Pocono Hosp.),* 114 Pa.Cmwlth.405, 539 A.2d 18 (1988). Thus, in light of the absence of any language in the Third Class City Code requiring that Miller's disability result solely from injuries sustained in the line of duty in order to be compensable, we conclude that the traditional substantial contributing factor standard applies.

■ As noted above, Dr. Regina testified that Miller's police work exacerbated his disability, although it was not the sole cause. As a matter of law, this testimony was not competent evidence upon which to base a conclusion that Miller should be denied a disability pension under Section 4303.2 of the Third Class City Code, 53 P.S. § 39303.2. Indeed, based upon all the evidence and the factual findings of Council, it is clear that he is entitled to the pension.

sylvania ... his full rate of salary as fixed by ordinance or resolution, until the disability arising therefrom has ceased."

9. In reaching this conclusion today, we reject any contention or implication that the Pension Board's failure to follow the City Ordinance and appoint three physicians to examine Miller requires a remand as the trial court so ordered. Specifically, we note that the provisions of the City Ordinance are clearly discretionary in that they provide that upon submission of substantial proof of disability, the Pension Board *"may, in its discretion,*

Accordingly, the order of the court of common pleas is reversed.[9]

## ORDER

AND NOW, this 18th day of August, 2000, the order of the Court of Common Pleas of Northampton County in the above captioned matter is REVERSED.

retire or honorably discharge such [police officer]." City Ordinance § 153.09. However, any officer who is aggrieved by any ruling of the Pension Board can appeal to City Council where he is entitled to a hearing *de novo.* We construe Section 153.09 as a preliminary step, which merely enables the parties to resolve the matter if possible without the necessity of a full hearing. The failure to appoint three physicians in making a decision, however, is harmless in light of the hearing *de novo* which is available upon appeal.